HIRAM E. EMERY & another, executors, *vs.* GEORGE T. WASON & others.

A testator bequeathed to his son during his life "the income of my stock" in a certain corporation, "the principal of said stock to be held by my executors during his life, and at his decease I give the same to" his surviving children. At the date of the testator's will and of his death, he owned certain shares in the stock of the corporation, and had also subscribed for shares in new stock and paid half the price thereof; but he died before the day on or before which the other half was payable, and his executors paid it and took the certificates of the new shares. *Held,* that the new shares passed by the bequest.

BILL IN EQUITY by the executors of the will of Thomas W. Wason. The case, as appeared from the bill and answers, on which it was reserved by the chief justice for the determination of the full court, was as follows :

Thomas W. Wason, by his will made May 3, 1870, in his last sickness, gave to his son George T. Wason "the income of my Boston & Albany Railroad stock during his life, the principal of said stock to be held by my executors during his life, and at his decease I give the same to his child or children who may survive him." He gave several other legacies, specific and pecuniary, but did not dispose of his residuary estate.

At the time of making his will, the testator was the owner of one hundred and ten full shares of the stock of the Boston

& Albany Railroad Company, and had subscribed for ninety shares in certain new stock which the corporation had voted to issue in order to increase its capital. He had become entitled to subscribe for and take at par twenty-two of these ninety shares, as a stockholder in the corporation, and had become entitled to subscribe for and take at par the remaining sixty-eight of the ninety shares, by purchasing the rights of other stockholders. He had paid to the corporation fifty per cent. of the par value of the ninety shares, and the other fifty per cent. was payable on or before October 1, 1870.

The testator died on August 21, 1870, without having paid anything more than the first fifty per cent. on the new stock, and without having taken a certificate thereof ; and the plaintiffs, after his death, paid the remaining fifty per cent. and received the certificate of the stock. The question presented to the court was, whether this new stock passed by the bequest for the benefit of George T. Wason and his children, or was to be disposed of as residuary estate.

*M. P. Knowlton*, for George T. Wason and his children.

*N. A. Leonard*, for other defendants.

AMES, J. By the act of subscribing for new shares in the stock of the railroad corporation, the testator became entitled to have them allotted to him, and to have them stand in his name on their books. No conveyance from the corporation was necessary to his title. By the same act he also made himself liable to the corporation for all lawful assessments ; and by the terms of the statute that liability could be enforced by forfeiture and sale of the shares, leaving him personally liable for the deficiency, if the shares so forfeited should not sell for a sum sufficient to pay his assessments with interest and the charges of sale. Gen. Sts. c. 63, § 9.

The language of this statute plainly imports that the title of such a subscriber is not a mere personal privilege, but that of a shareholder. What is taken from him and sold, in case of forfeiture for neglect to pay assessments, is not a mere right of subscription, but the shares for which he has subscribed. His shares are sold and transferred to the purchaser. The surplus, if on sale

they produce more than enough to pay the assessments, with interest and charges of sale, is to be accounted for to him as owner. A general bequest of all the testator's stock in a given railroad company must be construed as including that which is only in part paid for, as well as that which has been fully paid and certified. In either case it is stock, belonging to him, and capable of being transferred by his conveyance.

Without considering the question whether the testator's subscription to the new stock was of itself sufficient to create a contract to pay all assessments, and to give to the corporation a right which it could enforce by an action of contract; and even upon the assumption that the only mode in which the corporation could compel subscribers to pay their assessments is by the sale of delinquent shares, in the manner provided by statute; we think that the will requires in effect that the executors should pay the remaining instalment from the funds of the estate in their hands. At the date of the will the testator was the owner of two hundred shares. He had subscribed for ninety of the new shares, and it must be assumed that he did so with the intention and expectation of paying for them. He had paid one half of the amount at the time it became due, and if he had lived until the first day of the following October he would have paid the other half, which then became due. He intended that his investment in that stock should be the full amount of two hundred shares. He also intended that the whole income of those shares should go to his son, George T., during his life; and it is safe to say that he did not expect, and the will certainly does not require, that his son should pay the instalment that became due on October 1, 1870. No authority is given by the will to the executors to sell the shares or any of them; on the contrary, they are required to hold them during the life of George T., and at his decease to convey them to his child or children who shall survive him. The only way in which the executors could possibly fulfil their trust, so as to give to the son George T. the income intended for him during his life, and also so as to retain the shares themselves in their own hands until his decease, and upon that event to transfer them to his child or children surviving him, was to save them

from forfeiture and sale in consequence of neglect on their part to pay the remaining instalment. It was impossible that they could yield the income intended for George T. Wason during his lifetime, or constitute a portion of the fund for the benefit of his child or children after his decease, in any other way. If the executors had suffered the treasurer of the corporation to sell the ninety shares for neglect on their part to pay the remaining instalment, the effect would have been that the income intended for the testator's son (so far as this description of stock is concerned) would have been reduced to but little more than one half of the amount plainly intended by the will, and the capital intended for the grandchildren would have been reduced in the same proportion.

It appears to us, therefore, that the only mode, in which it was possible for the executors to give full effect to the will, was by doing what they have done in fact, and what the testator intended to do, and would have done, if he had lived; that is to say, by paying the remaining instalment, when it became due, from the general funds of the estate. Our conclusion is, that this payment was properly made by the executors ; that the will does not authorize them to charge it to the account of any legatee, or to any account other than the general estate under their administration ; and that the ninety shares must be held subject to the same trusts as the original one hundred and ten.

*Decree accordingly.*