NEW YORK COUNTY.—HON. RASTUS S. RANSOM, SURROGATE.—February, 1889.

MATTER OF QUIN.

*In the matter of the judicial settlement of the account of* STEVEN A. DODGE *and* JENNIE WALSH, *as executors of the will of* JOSEPH P. QUIN, *deceased.*

A motion to set aside the report of the referee and for a rehearing for the purpose of introducing important and material testimony, will not be

granted where the failure to introduce the evidence before the referee was due to "inattention" of counsel.

Where a testator bequeaths all the remainder of the stock, tools, machinery, and book accounts of a certain business, after payment of the debts and liabilities thereof, to certain legatees, an unsatisfied judgment obtained by testator in his lifetime for goods sold by him in the said business is an asset of the business, and not of the general estate.

A credit will not be allowed executors for the payment of an accountant employed by them to prepare their account because they did not have the necessary leisure to do so themselves, it not appearing that the employment of an accountant was necessary for any other reason.

Executors will not be allowed a payment for preparing their inventory.

The testator devised three parcels of real estate, two of which were incumbered, in trust, to his three children respectively, and it appeared from the will that he wished to equalize these devises by giving the executors authority to sell certain other specific real estate, and he directed them to pay off the incumbrances on the two parcels already mentioned. *Held*, that the executors were bound to sell the specified parcels of real estate to raise the necessary funds as soon as they possibly could without sacrificing them, and where they have refused a reasonable offer at auction therefor, the payments of interest accruing on the mortgages on the two incumbered parcels since the date of the auction, should be disallowed them; and further *held*, that interest on the mortgages accruing prior to the time of the auction, should be charged to the general estate.

Where the executors of the estate offered real estate at public auction, and it does not appear that the price bid at such auction was not a full and fair price, the executors will not be allowed the auctioneer's fees paid by them on bidding in the property.

Where the testator bequeaths his personal estate in trust to his executors for his three children, to be invested in bond and mortgage or in unincumbered property, and directs that the executors "shall turn over to my children to occupy either or any of the premises so held in trust for him or her on the payment of taxes, insurance and repairs," all the payments for taxes, insurance and repairs should be charged to the trust estates respectively, and not to the general estate.

To justify the payment of interest on taxes, the burden of proof lies upon the executors to show that there were not enough funds of the estate to pay the taxes at the time they were due, otherwise the payments of interest will be disallowed.


ACCOUNTING of executors.

The facts fully appear in the opinion of the Surrogate.

MATTER OF QUIN.

CALVIN & BRUSH, *for the executrix,* JENNIE WALSH, *and executor,* STEPHEN A. DODGE. .... ....

WILLIAM G. BATES, *special guardian.*

STEPHEN PHILBIN, *for special guardian.*

JACKSON & BURR, *for* W. G. QUIN.

WILLIAM P. MULRY, *for* JOSEPH P. QUIN.

THE SURROGATE.—On the 19th day of March, 1886, the above named decedent died, leaving a last will and testament, which was duly admitted to probate on the 5th day of April, 1886, and letters testamentary duly issued to Stephen A. Dodge and Jennie Walsh, who immediately entered upon the discharge of their duties as executor and executrix, and trustees under said will.

On November 1, 1887, William G. Quin, a son and legatee, instituted proceedings for the compulsory accounting of said executor and executrix and trustees, who, on December 1, 1887, filed a petition for a voluntary accounting, and, on the 16th day of January, 1888, filed their account, to which objections were filed by William G. Quin, Joseph P. Quin and William G. Bates and Stephen Philbin, as special guardians of minor legatees.

An action had been brought in the Supreme Court of Kings county, to compel said executor, executrix and trustees to sell certain property directed to be sold by the will of decedent. A decision was rendered March 14, 1888, directing them to sell said property within three months from the date of the entry of the judgment. After the sale, as thus directed, a supplemental account was filed, and objections thereto filed by William G. Quin and William G. Bates as special

guardian. The original and supplemental accounts and objections thereto were sent to a referee, whose report has been filed, to which exceptions by all parties have been filed.

A motion is made by Joseph P. Quin to set aside the report of the referee, and for a rehearing, for the purpose of introducing important and material testimony. It appears from the affidavit accompanying the notice of motion that the reason why the testimony was not given before the referee was owing to "inattention" of counsel.

The power of the Surrogate to order a rehearing is derived from section 2481, Code of Civil Procedure, subdivision 6, which reads as follows: "To open, vacate, modify or set aside, or to enter, as of a former time, a decree or order of this court; or to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error or other sufficient cause." . . . .

It will be seen that this application must come under the provisions "or other sufficient cause," or "newly-discovered evidence."

In Olmsted v. Long, 4 *Dem.* 44, application was made to the learned Surrogate of Westchester county that a decree theretofore entered be opened, vacated and set aside, on the ground that certain material evidence had been recently discovered; and on the further ground of alleged gross neglect and misconduct of petitioner's attorney in not bringing the facts stated to the knowledge of the court; the Surrogate held that even if the attorney had such knowledge he must have derived it from his client, and that would con-

tradict the statement that the evidence was "recently discovered."

The application made herein, is not even so strong as the one above cited, for it is alleged that the evidence now sought to be introduced is "newly discovered," but on the contrary, it appears that it always has been within the knowledge of the petitioner and his attorney, and was not offered because of the attorney's "intention." The motion is denied.

I now come to a consideration of the referee's report, and exceptions filed thereto. Under the third clause of the will, the testator bequeathed his plumbing business to his son, Joseph P. Quin, Jr., and to Sarah Quin, the wife of his son, William G. Quin, who assigned her interest to Joseph P. Quin, he assigning in turn to William G. Quin, who now holds it.

During his lifetime the testator, in carrying on the plumbing business, sold goods and materials to one Benjamin Holliday, and previous to his death obtained judgment against Holliday for $6,000, which was satisfied by the executors upon receiving $3,800.16. The learned referee finds that this sum should be considered as an asset of the plumbing business, and not as an asset of the general estate. This finding is excepted to by Joseph P. Quin and the executor.

The provision of the will relating to the plumbing business is as follows:

"I order and direct my executors, from and out of the assets of the plumbing business now carried on by me, to pay all the debts and liabilities of the said business; and I give all the remainder of the stock, tools, machinery and book accounts, together with the good

will of my said plumbing business, to my son, Joseph P. Quin, Jr., and Sarah Quin, wife of my son, William G. Quin."

Although I have been unable to discover any adjudication involving the precise circumstances as in the case at bar, still there are many which turn on the same point, and necessarily involve the same general principle, viz. : what, by the terms of the bequest, the testator intended to bequeath.   And in determining this, we are not only to be governed by the exact words of the will, but, also, by all attending and existing circumstances which will throw any light upon the intention of the testator.

In Manning v. Purcell, 7 *De G. M. & G.* 55, it was held that the bequest of " all my moneys" included money due on deposit notes of the testator's bankers, as well as on the balance of his current account, and also money in the hands of a stakeholder.

" Money or moneys" may include bank stock, notes and bonds, if such appears to be the intent. Fulkerton v. Chitty, 4 *Jones, N. Car. Eq.* 244 ; see also Paul v. Ball, 31 *Tex.* 10 ; Smith v. Davis, 1 *Grant Cas.* 158.

In Emery v. Wason, 107 *Mass.* 507, the testator bequeathed to his son during his life " the income of my stock " in a certain corporation, " the principal of said stock to be held by my executors during his life, and, at his death, I give the same to his surviving children."   At the date of the testator's will and of his death, he owned certain shares in the stock of the corporation, and had also subscribed for shares in new stock, and paid half the price thereof ; but he died be-

fore the day on which the other half was payable, and his executors paid it and took the certificates of the new shares. It was held that the new shares passed by the bequest. See, also, Carr v. Carr, 1 *Meriv.* 541; 1 *Phil. C. C.* 361. And by a devise of a West Indian plantation, the stock, implements, utensils, etc., will pass. Lushington v. Sewell, 1 *Sim.* 435.

The language of the clause of the will in question, fully establishes to my mind that it was the testator's intention to include in the term " all the remainder of the stock, tools, machinery, book accounts, etc.," this judgment which was unsatisfied at his death.

The referee next finds that the item of $48.45, paid by the executors, should be allowed and charged to the plumbing account. To this finding exception is filed by William G. Quin.

On this point the testimony is, that the necessities of the plumbing business requiring " that the executors should have money, they took certain stocks, among which was a horse and wagon and buggy, which were used in the plumbing business." Houtman & Petrie had a bill against the horse for its keep, amounting to fifty dollars, which the executors settled for $48.45. At that time William G. Quin was conducting the plumbing business, and was solely interested therein.

I agree with the learned referee, that the executors have discretionary powers, the exercise of which would include such payment as was made by them on this account. Although there is no evidence as to the time when the debt was contracted, still it was a debt against the plumbing business and properly charged

thereto.   The burden of proof was on the objectant, who failed to controvert either the validity, reasonableness or legality of the payment.   The exception is overruled.

The referee, in his fifth finding of fact, disallows, first the item of fifty-five dollars, which the executors asked credit for, for payments to J. F. McShane, for services rendered by him in preparing their accounts, and a certain item of thirty dollars which the executors asked credit for, for payment to J. S. Ballenstein, for services rendered in making the inventory.   To this finding the executors except.   The payments to McShane for preparing the accounts were properly disallowed.

It appears from the testimony of Col. Dodge, that the payments to McShane were purely and simply for preparing the accounts, and, as expressed by the witness, " there was no advice about it at all ; it was made up as I would have made it up myself if I had leisure."

It is, of course, well settled that it is the duty of the executor to prepare his account, unless he can show that such preparation would be impossible, owing to the volume of the account, or that its nature required the employment of an accountant, or for other like cause ; but not because of his not having the leisure to devote to its preparation.   By the giving of commissions, the statute intends to compensate the executor for such service.   The law provides for the filing of an inventory, and directs certain officers to be appointed by the Surrogate to prepare the same, and also fixes their compensation.   The claim of the

executors for credit of the amount paid for preparing the inventory, must be disallowed.   The exceptions to the fifth finding of fact are therefore overruled.

The third, fourth, fifth and sixth exceptions of the executors, the first exception of the special guardian, and the second exception of William G. Quin, are directed, substantially, to the one question, viz.: what course will be pursued with regard to the allowance of interest and tax upon the Boulevard property, and the expenses incurred when it was exposed for sale in April, 1887 ?

The fourth clause of the will provides as follows :

" I order and direct my executors hereinafter named, and I do hereby empower them to sell and dispose of the property owned by me, situate on the northeast corner of the Boulevard and West Sixty-second street, in the city of New York."

And the fifth clause provides : " I order and direct my executors to pay any and all incumbrances upon my real estate, mortgages or otherwise."

The facts as deduced from the testimony are that in the spring of 1887, the property was offered for sale at the Real Estate Exchange, by the executors, and was bid in by them, and they held it until compelled to sell it by decree of the Supreme Court, above referred to.

By his will, the testator gave to his executors in trust for his three children, certain parcels of real estate, and created three separate trust estates.   That which he gave to his son, William G. Quin, was free and clear of all incumbrances, and the parcels given to Joseph P. Quin and Jennie Walsh, were mortgaged

each for $10,000.   The referee finds that the terms of the will show that it was the intention of the testator to equalize these bequests to his children, by directing the executors to sell the Boulevard property, and to pay any and all incumbrances upon his real estate ; and it of course follows that as long as the mortgages remained upon the two parcels, such intention was defeated.

The referee also finds that the executors were bound to sell the Boulevard property as soon as they could do so without sacrificing it.   He further finds that the interest upon the mortgages incumbering the parcels devised to Joseph P. Quin and Jennie Walsh up to the 1st of May, 1887, when the Boulevard property was offered for sale, should be charged against the general estate, and that all payments of interest upon said mortgages since that time should be disallowed.

The referee further finds that the payment of $103.25 to Harnett & Co. for offering the property for sale at the time it was bid in by the executors should be disallowed.

The question to determine at this point resolves itself simply to the inquiry of whether by the terms of the will the executors had the right to exercise any discretion as to the time when they should offer this Boulevard property for sale.   The evidence is very meagre and unsatisfactory on this point.   The executor, Mr. Dodge, testifies that a person offered to find another who would give $90,000 for it, and that the heirs said no ; and that he had no conversation with William G. Quin, one of the heirs, in regard to that

offer.    William G. Quin testified that the last *bona fide* bid at the first sale was between $84,000 and $86,000.

The burden of proof was on the executors to show that the price offered for the property in the spring of 1887 was not a full and fair price, or that the condition of the real estate market would not have justified the sale, or, in fact, any evidence whatever, either of themselves or of the others, which would show that a careful and prudent man would have refrained from selling at that time, or for the price offered, viz., more than $80,000.

The burden of proof being on the executors to show that if the property had been sold in the spring of 1887 it would have been at a sacrifice, or some other good reason for not making the sale, and such burden not having been discharged in the slightest degree, I hold on the evidence that, even if they did have the discretionary power of sale, it was improperly exercised.    But on this point of whether or not the power of sale was imperative, it would have been error for the learned referee to have found otherwise than he has.

In the action brought in Kings county to compel the executors to sell this Boulevard property, the Supreme Court in rendering its decision held, in its first conclusion of law, " that the power and discretion contained in the will of the testator, in the clause thereof numbered four, which directs a sale of the property situate on the northeast corner of the Boulevard and West Sixty-second street, in the city of New York, is an absolute and imperative power, and in and by said

will the said testator intended to, and did, equitably convert the said land into personal property for the purpose of distribution and division of his estate, and for the proper and prudent investment thereof under the terms of the said will."

The entire scope of the will undoubtedly indicates the intention of the testator to have been to direct his executors to sell this property within a reasonable time, and that such reasonable time in the judgment of the executors had elapsed, when the property was offered for sale by them in the spring of 1887, and that they considered the sale at that time would be proper and advantageous is shown by the fact of their offering the property for sale. I hold, therefore, that the power of sale was an imperative one, and that the executors should have sold the property to the highest bidder at the sale in 1887.

The finding of the referee, that the interest upon the mortgages up to May 1st, 1887, when the Boulevard property was offered for sale, should be charged to the general estate account, is confirmed. The finding that all payments of interest upon said mortgages since that time should be disallowed, is confirmed.

The finding that the payment of $103.35 to Harnett & Co., auctioneers, for services rendered in offering the property for sale the first time be disallowed, is confirmed, for there was no sale; this court simply holding there should have been one.

The finding that all taxes, assessments, insurance and repairs upon the different parcels willed in trust to the testator's three children should be charged to the

individual trust accounts and not to the general estate account, is confirmed.

The language in the fourteenth clause in the will is as follows : " I order and direct that my executors shall invest the personal property given to them in trust for my three children in the purchase of improved, unincumbered real estate in the city of New York, or on bond and mortgage on improved property, and shall turn over to my children to occupy either or any of the premises so held in trust for him or her, on the payment of the taxes, insurance and repairs by him or her."

To my mind, this shows the undoubted intention of the testator to have been to charge each trust estate with the burden of the payment of its own taxes, insurance, etc.

The seventh finding of the referee, that all payments by the executors for taxes and assessments upon the Boulevard property were proper payments and should be allowed, is overruled, it having been held that the sale of this property should have taken place in the spring of 1887, and the executors have been disallowed one expenditure because made subsequent to that time, the referee should have disallowed this item, amounting to $1,888.

William G. Quin excepts to the finding of the referee that allows the executors interest on the taxes in 1884 on the Boulevard property after August, 1886, and interest on the assessments for repaving Sixty-ninth street after August, 1886, at which time they were in funds, and should have paid said taxes and assessments.   The taxes of 1884 were a lien upon the

Boulevard property and the assessment on the Sixty-ninth street property had been confirmed. These taxes under the statute (4 R. S., 8th ed., 2560, § 27) were preferred debts, and the assessments were personal debts, payable out of the personal estate of the testator. The burden was on the executors to show why they did not pay these taxes and assessments in August, 1886, but there was not a particle of evidence offered in their behalf to that effect. The exceptions are sustained.

The exception of William G. Quin to the failure of the referee to charge the executors with the value of certain stock of the Mercantile Insurance Company is overruled.

The exception to that portion of the report which finds the balance of the income of the specific estate devised in trust to William G. Quin to be $1,108.03 instead of $1,114.03, is sustained, it being evidently a clerical error.

The second exception of the executors, that the referee should have found that the judgment of the Supreme Court directed that the sale of the property should be made within three months from the entry thereof, is sustained.

The third and fourth exceptions of the executors are overruled, such findings as requested not being material.

The report of the referee is confirmed, with the above exceptions.