HASBROUCK, Administrator, &c., *v.* HASBROUCK *et al.*

An administrator who sells effects of his intestate upon credit, cannot relieve himself from accounting for the price by showing that it was greater than their value.

The administrator sold to a surviving partner the intestate's interest in the partnership, taking such partner's notes for the price, with which price he charged himself in his inventory. *Held*, that the administrator must account for the value estimated, though the surviving partner became insolvent, the notes were never paid, and the partnership interest was of less value than the amount of the notes.

Henry W. Hasbrouck, of the city of New York, merchant, died intestate, October 9, 1859.   On November 10th, 1859, the respondent was duly appointed his administrator by the surrogate of the county of New York, but never filed an inventory of the estate of the deceased until the 18th of October, 1861.   In that inventory he credited assets as follows : " The interest of the intestate in the stock in trade, effects and credits of the late firm of Kingon & Hasbrouck, importers, &c., in the city of New York, and in which the intestate's interest was one-half, $14,703.91."   It appeared that the intestate, at the time of his death, was a partner in trade with one James Kingon, and after his death, the administrator and the surviv-

ing partner, with the aid of an umpire, mutually chosen, made a valuation of the interest of the deceased in said partnership, and on or about the first of January, 1860, the administrator sold said interest to said Kingon, and took his notes therefor, payable in twelve, eighteen and twenty-four months, the administrator himself indorsing the notes personally. The first note was paid, the two last being unpaid, by reason of the insolvency of the maker and indorser. The surrogate, in the final accounting of the administrator, charged him with the amount of the two unpaid notes, and made a decree, directing the payment, to the distributees entitled thereto, of the balance in his hands on this basis. The administrator claimed to show on the accounting that the value of the interest of the intestate in the assets of the firm, at the time of the settlement between him and the surviving partner, was not as large as the amount at which he sold the same to Kingon, and evidence offered to establish such fact was rejected by the surrogate. Some evidence had been received, tending to show that some of the bills receivable of the firm, estimated on the settlement as good, had subsequently proved valueless. The Supreme Court reversed the surrogate's decree, holding the evidence admissible, and directed a new accounting to be had. The distributees appealed to this court.

*Robert Jackson*, for the appellants.

*Charles A. Rapallo*, for the respondent.

DAVIES, J.  It seems to me, that this evidence was properly excluded by the surrogate. It was not offered to show that the assets or interest of the intestate were not of the value at which they were sold at the time of the sale, but that subsequent events have rendered them less valuable than then estimated, and for which they were sold. The purchaser does not make this claim, and for aught that appears, he is entirely satisfied with his bargain. Neither he nor his indorser ever set up that as a reason for not paying the note, and I think the administrator, in this proceeding, is precluded from

showing that he received too large a price for the thing sold. If he could do so in this instance, he could do it in any, where he had received the proceeds of the intestate's property and misapplied or used it in such manner as to make himself personally liable for the amount. In other words, if he had properly used and invested the proceeds, the estate would have had the benefit of the sale; if he misappropriated them, so that he was personally liable for the amount, he might discharge himself for his breach of duty by showing that the amount he received was larger than he would have obtained under other circumstances. He cannot shift his ground, and thus evade the responsibility which the law imposes. It is true, that the inventory is but *prima facie* evidence of the amount of the estate, and the administrator or executor may show, in diminution of the amount with which he is to be charged, that by diligence and fidelity, he has been unable to collect and realize the amounts contained in the inventory. So, on the other hand, the parties interested in the estate, may show that assets, other than those contained in the inventory, have come, or by the exercise of due care and attention, should have come, into the hands of the administrator to be administered. This case cannot be distinguished in principle from that of *Schenck* v. *Dart* (22 N. Y., 420). In that case, the testator left certain shares of stock, which were inventoried at eighty per cent of their par value. The executor made sale of a portion of the shares, and they were sold at fifty-six per cent of the par value, and though nominally purchased by another person, were in fact purchased by the executor. On the final accounting, the controversy was, whether he was to be charged with the inventory price of the shares, or with the price at which they were bid in at the sale. This court held the sale ineffectual, and that the powers of sale conferred upon the executor, by the will of the testator, could not be exercised in his own favor, either directly or indirectly: that he was, therefore, properly charged with the value of the stock. It was said that upon the inquiry what was the value, we think the best evidence which the case presents is, the sworn inventory of

the executors themselves. We have, in the present case, that guide, and there seems no injustice to holding this administrator to account for the property upon the valuation placed upon it by both seller and purchaser and a distinterested umpire, and further attested by his own oath and a *bona fide* sale made thereof for the amount. Again, the law has been settled in this State for years, that when any administrator sells the estate of his intestate, on credit and without security, he is to be charged with the whole amount of the purchase-money, on the ground that he was guilty of negligence, in parting with the estate without payment or security. This was distinctly ruled by Chancellor KENT, in 1818, in *King* v. *King* (3 Johns. Ch., 352.) The same doctrine is reaffirmed by Chancellor WALWORTH, in *Orcutt* v. *Orms* (3 Paige, 464).

In any aspect, in which the matter can be regarded, it seems to me that the administrator is chargeable with the amount of the two notes of Kingon, and that the decree of the surrogate, charging him therewith, was correct. If these views are approved, it follows that the judgment of the Supreme Court should be reversed, and that the decree of the surrogate should be affirmed with costs.

DENIO, Ch. J. I am of opinion that the decree of the surrogate was correct, and that the Supreme Court fell into an error in reversing it. By taking the notes of the surviving partner upon a long time, the appellant exposed the estate to loss from his insolvency, and such loss has actually occurred. The duty of an administrator is to convert the estate of the deceased into money, as soon as it can be reasonably done: to pay the debts and make distribution. The assets in this case being, for the most part, the interest of the deceased in the copartnership, of which he had been a member, he was not obliged to expose them to sale, and if the survivor was perfectly solvent and responsible, he might have suffered the concern to be wound up by him (*Evans* v. *Jones*, 9 Paige, 178); but if any doubt existed upon that question, then or at any time thereafter, it was his duty to apply for the appointment

of a receiver. But he had no right to tie up his hands for two years, and thus preclude himself, and any one who might succeed him as the representative of the deceased, so that he could not, under any circumstances, employ that precautionary measure to save the estate from loss. His conduct cannot be justified under the rule that the survivor may be left to liquidate the affairs of the firm, for that was not the nature of the transaction. The liquidation, so far as the estate was concerned, took place when the notes were given. He was no doubt justified in selling the interest of the estate to the surviving partner, but not in leaving the proceeds of that sale in the hands of any person, without adequate security. Here, he undertook to be himself a surety for the money, thus admitting that Kingon's responsibility was not sufficient. He had no right to substitute his own individual liability for the ownership of the assets, for his sureties would not be responsible if he failed to make good his indorsement: and, besides, by keeping the notes in his own hands, he failed to give any legal effect to his design to make himself reponsible.

He was not entitled to show that the interest of the deceased in the copartnership was less than the amount for which he sold it. The question put to Kingon was incompetent for another reason. It called for what the witness might conjecture to be the value of the interest, which value can only be legally ascertained by taking an account. The judgment of the Supreme Court must be reversed and the decree of the surrogate affirmed.

WRIGHT, SELDEN and ROSEKRANS, Js., concurred.

MARVIN, J. (dissenting.) The decree of the surrogate was reversed upon the ground that, though the inventory filed by the administrator was *prima facie* evidence against him of the value of assets, and of what they consisted, such evidence was not conclusive. Why is the question thus narrowed down to the *value* of goods sold by the administrator, though sold for a much larger sum ? An administrator cannot be permitted to make a profit to himself by selling the goods

of the estate for more than they are worth. He is accountable for all that he receives. It seems to me that the question lies, in such cases, farther back, and that it is, whether the executor has made himself personally liable in making the sale. If he has, and has not realized the price for which the goods were sold, and may not, by reason of the insolvency of the vendee, or other cause, and the claimants, creditors, and next of kin, &c., repudiate such sale, and seek to make the administrator liable personally, as for maladministration, then they can only claim the value of the property or assets sold. The estate has only been damnified to such extent. And such seems to be the question presented in this case, or rather the question made upon the appeal, though the evidence offered to show how long it would have taken to settle the affairs of the partnership and realize the assets, if it had been wound up in the ordinary way, would seem to look to another question, viz., whether the administrator had acted prudently or had violated his duty.

The administrator, however, does not appear to have put his case in his appeal to the Supreme Court upon this ground, as he says that he insists as such administrator that he is responsible to such estate only for the amount of the cash value of the undivided interest of the estate at the time of the sale and disposition thereof made by him, and that he has a legal and equitable right to show such cash value as the measure of his indebtedness to the estate.

I have no doubt that this position is sound enough, upon the assumption that the acts of the administrator in making the sale are repudiated by those interested in the assets, and they seek to make the administrator personally liable, and he can evade such liability. Those interested in the assets or property cannot have sustained a legal injury beyond the value of the property, in the faithful administration of which, they had an interest. In this view of the case I shall not consider the question whether the administrator was liable personally for anything that had been done. If he was, such liability did not exceed the value of the goods and property sold

Kingon on credit, and there was nothing in the case concluding the administrator from showing such value. The inventory was no more than *prima facie* evidence of the value.

The judgment of the Supreme Court should be affirmed.

EMOTT, J., also dissented.

Judgment reversed, and decree of surrogate affirmed.