## *In re* Beach's Estate.
## (1 Misc. Rep. 27.)

(*Surrogate's Court, Cattaraugus County, Filed September,* 1892.)

1. WILL—WHETHER LIFE ESTATE OR GIFT ABSOLUTE INTENDED.

Testator gave and bequeathed to his wife "all of my personal property that I shall be possessed of at the time of my death, and all of my household goods, and the use of my real estate during her natural life. * * * (2) To my daughter M. the organ that is now at my house; after the death of my wife, I give (3) to my son B. the sum of $500; (4) to my son W. the sum of $500." *Held,* that the widow took but a life estate in the personal property, excluding the organ.

2. WILL—IRRECONCILABLE PROVISIONS.

As in such will the gifts of the personal estate to the wife and the organ to the daughter were irreconcilable, the daughter took the organ immediately and absolutely.

3. WILL—CONSTRUCTION.

The words "after the death of my wife" should be read in connection with each of the following bequests, and therefore the two $500 legacies became payable after the death of the widow.

4. ALLOWANCE FOR MONUMENT.

As the estate amounted to $8,000, the rights of creditors were not interfered with, the executor had consulted with several of the legatees, and no one objected to the expenditure but the widow, and the monument was nearly ready for delivery, *held,* that although the cost of the monument ($400) reached a limit held to be unreasonable, it would be allowed to the executor under the circumstances.

5. WITNESS—WHEN COMPETENT UNDER CODE CIV. PRO. SEC. 829.

Although an executor is not a competent witness in the first instance, to testify to transactions between himself and his decedent as to a partial payment upon a joint note of decedent and the executor, yet, having been examined, and contestant having proved by him sufficient to establish his individual liability, *held,* that the executor might testify as to the entire transaction so as to relieve himself of such liability.

6. EXECUTOR'S ACCOUNTS—JOINT NOTE OF DECEDENT AND EXECUTOR.

Decedent's estate is liable for the balance due on such a note, when it appeared the decedent gave the proceeds to the executor, his son, to

buy a team, and intended to pay it himself, and that money paid and indorsed on the note was furnished by decedent.

7. SAME—EMPLOYMENT OF CLERK BY EXECUTOR.

If an executor employs another to transact for him the usual and ordinary duties of his trust, the expense of such cannot be charged to the estate.

8. SAME—EXECUTOR'S LIABILITY FOR LOSS ON RESALE.

An executor is liable for loss on a resale of personal property, when, although the purchaser obtained the goods, he did not pay cash, or give a note as required by the terms of sale, and was allowed by the executor, who took a mortgage on the articles sold, to secure a debt due to himself, to retain possession of the property for seven months.

Judicial settlement of account of executor of Isaac H. Beach, deceased.

A. & G. E. Spring, for executor; William H. Ticknor, for contestant.

DAVIE, S.—This is a proceeding for the judicial settlement of the accounts of the executor of the will of Isaac H. Beach, who died April 23, 1891, leaving him surviving his widow and six children, and real estate of the value of $6,000, and personal property to the amount of about $2,000. Such settlement necessitates a construction of certain portions of the will, and the widow files objections to various items of the account. The will is very inartistically drawn, and it is no easy task to determine the actual intent of the testator therefrom. The disposing portion of said will is in the following form:

"First, after all my lawful debts are paid and discharged, I give and bequeath to my wife, Hannah M. Beach, all of my personal property that I shall be possessed of at the time of my death, and all of my household goods, and the use of my real estate during her natural life. But I will that she shall keep the buildings on said real estate in good repair, and pay all taxes on the same. (2) To my daughter Mabel L. Beach, the organ that is now at my house, after the death of my wife, I give. (3) To my son Benjamin C. Beach, the sum of $500.

(4) To my son Willey E. Beach the sum of $500. · (5) The balance of all my property, of every kind, name and nature, I will shall be equally divided, to share and share alike, between all of my six children, namely, Benjamin C. Beach, Willey E. Beach, Rosetta E. Ryder, Clara E. Cagwin, Ella L. Vedder, Mabel L. Beach."

The questions raised are: First, does the widow take the personal estate absolutely, or simply a life estate therein? and, second, when are the two $500 legacies payable?·

Various rules of construction have been formulated, but the chief solicitude of courts, in construing wills, is to ascertain the actual intent of the testator, and carry the same into effect as far as possible. The testator in this case was worth about $1,000 at the time of his marriage with the contestant. They lived together as husband and wife for many years, and the balance of his estate was accumulated by their joint industry and frugality. Contestant is now 57 years of age. Hence it would seem that the testator would very naturally desire, in the first place, to make some certain and ample provision for the maintenance of his wife during the time she might survive him, but to do so in such a manner as not to jeopardize the rights of his children. How could such a result be better accomplished than by giving the wife the use of the entire estate during her life, with provisions for its equitable distribution among his children after her death? The evidence shows that the annual rental value of the real estate is $350. The income from the personal estate would increase this amount somewhat. This would seem to be a very moderate provision for the maintenance of the widow. Such a disposition of the personal estate, however, would seem to meet the approval of a careful, prudent man, like testator, rather than an absolute gift of the same to her, thereby endangering the rights of the children through the possible improvidence or lack of prudence incident to the advanced age of the widow. Whether the provisions of this will are susceptible of the construction suggested depends entirely upon the use made of the term "during her natural

life"—whether such term is held to relate to the entire preceding sentence, or simply to the single clause, "and the use of my real estate." Had the words "the use of" been omitted from such clause, the ordinary interpretation of the entire sentence would make the words of limitation "during her natural life" applicable to the entire bequest. Areson v. Areson, 3 Denio, 458; Van Allen v. Mooers, 5 Barb. 110; Carpenter v. Carpenter, 2 Dem. Sur. 534. It is urged on the part of the contestant that the words "the use of," coupled with the disposition of the real estate and not with that of the personal property, indicates a design on the part of the testator to convey a greater estate in the latter than in the former; that, had he intended to limit the bequest of the personal property in the same manner as the real estate, he would have used the same words of limitation, "the use of," in both instances; that this difference in phraseology takes the case out of the operation of the rule of interpretation above cited. While fully recognizing the force of this suggestion, yet, in view of all the attendant circumstances, the extent of the estate, the habits and mode of life of the contestant, and the character of the other bequests in said will, I am of the opinion, and must hold, that it was the intention of the testator to give to the widow simply a life interest in said personal estate.

The next question relates to the bequest of the organ to the daughter Mabel. The preceding portions of the will dispose, in terms, "of all the personal property and household furniture." This would, of course, carry the organ, were it not for the subsequent specific bequest thereof to the daughter. The two provisions of the will are absolutely irreconcilable, so far as the disposition of the organ is concerned. This being the case, the latter provision must prevail. Van Nostrand v. Moore, 52 N. Y. 12; Chrystie v. Phyfe, 19 N. Y. 345. Consequently the daughter takes the organ absolutely, and is entitled to the immediate possession thereof.

The conclusion already arrived at necessarily determines the remaining question, as to the time of payment of the two $500

legacies. The time of payment is dependent entirely upon the use made of the expression, "after the death of my wife." It is urged on part of these legatees that this clause should be read in connection with the bequest of the organ, but I cannot adopt such view, but must hold that such clause is to be read in connection with, and as a part of, each of the following bequests. There is nothing in the will or surrounding circumstances indicating an intent on testator's part to make these legacies immediately payable out of the real estate; and, having given the widow the use of the personal estate during her lifetime, it could not be available for payment of legacies or distribution until the termination of her life estate. In my judgment the only reasonable construction which can be given to this will is to hold that the widow takes a life estate in all the personal property, except the organ; that the organ passes to the daughter absolutely; that upon the death of the widow the two $500 legacies become payable, and the residuum subject to distribution.

The account filed shows that the executor has entered into an agreement, in writing, for the expenditure of $400 for a monument to be placed at the grave of the testator. The widow objects to this expenditure as unreasonable and excessive. Of course, no arbitrary rule has been or can be laid down, establishing the question of reasonableness of funeral expenses. Each case must be determined from its own particular circumstances. A reasonable expenditure for a tombstone is regarded as a legitimate item of funeral expenses to be allowed to the executor upon his accounting. Ferrin v. Myrick, 41 N. Y. 315; Tickel v. Quinn, 1 Dem. Sur. 425. So the only question in this case is whether the sum named was reasonable or not. In one case it was held that an expenditure of $500 for such purpose, where the estate did not exceed $8,000, was unreasonable, and was not allowed against the heirs. Owens v. Bloomer, 14 Hun, 296. In case of an estate of $2,600, it was held that an expenditure of $250 was not unreasonable. In re Erlacher, 3 Redf. Sur. 8. In case of an estate of $1,200, that $150 was a

reasonable expenditure. Emans v. Hickman, 12 Hun, 425. While the expenditure made by the executor in this case would seem to reach the limit, yet, in consideration of the fact that the estate amounts to $8,000; that the rights of creditors are not impaired by the expenditure; that the executor consulted with several of the legatees before making the contract, and no objection is made to such expenditure by any one but the widow; that the executor, as such, evidently in good faith, has contracted for the monument; that the monument itself has been prepared, and is now nearly ready for delivery—I am unable to see how the interests of this estate are to be subserved by holding that this expenditure was unwarranted. *In re Laird,* 42 Hun, 136.

Contestant also objects to the payment of a certain note by the executor to one D. P. Howes, to the amount of $152.65, upon the grounds: First, that the right of action thereon against the testator was barred by the statute of limitations before his death; and, second, that the debt for which said note was originally given was that of the executor himself. The contestant called and examined the executor as a witness, and established the fact by him that such note was originally given for his individual benefit, and that the indorsements thereon were for moneys which he had himself paid. The note itself bears date August 8, 1881, and the last indorsement thereon is of the date of March 28, 1890; so that, if said note was not outlawed, it is in consequence of the partial payments made thereon. This state of facts, unexplained, would show such payment by the executor to have been unauthorized. A partial payment by one of the makers of this note, without the consent or authority of the other, would not prevent the statute running against the one not paying. Now, the executor would not have been a competent witness, in the first instance, to testify to the transaction which took place between himself and deceased regarding such payment, or the original inception of the note (section 829, Code Civil Pro.); but the contestant, having examined the executor as a witness, and proved by him a sufficient portion of said transactions to establish his individual liability,

removed such disability, permitting him to testify to the entire transaction for the purpose of relieving himself of such disability. (Nay v. Curley, 113 N. Y. 575, 21 N. E. Rep. 698; Davis v. Gallagher, 55 Hun, 593, 9 N. Y. Supp. 11). The further examination of the executor shows, not only that the money paid and indorsed on the note was furnished by the testator with the express instruction that it should be so used, but also that, in the making of the note, originally, testator gave the proceeds thereof to the executor to aid him in buying a team; that testator in fact gave the note to the son, and designed to pay the same himself. These facts justify the payment of the note out of the estate.

Contestant also objects to the payment of the item of $24 to Mr. Whiting. A portion of this sum is a proper charge against the estate. The appraiser's fees for two days at $3 per day is a proper and reasonable charge. The witness fees of Mr. Whiting and wife, from their residence to Franklinville, to attend the probate of the will of deceased, amount to $3.76, which is also a proper charge. The balance of said item appears to be for services purely clerical in their character, and such as the executor could and should have performed himself. If the executor saw fit to employ another to transact for him the usual and ordinary duties of his trust, and for which the commissions were designed as full compensation, the expense of procuring such services becomes his own debt, and cannot be charged to the estate. Hall v. Campbell, 1 Dem. Sur. 415; *In re* Carman, 3 Redf. Sur. 46; Ward v. Ford, 4 Redf. Sur. 34.

The remaining question arises out of the following facts: On the 10th day of December, 1891, the executor sold certain personal property belonging to the estate at public auction. The terms of the sale were cash, or good, indorsed paper running 10 months. At the sale certain property was sold to one Robinson; among other things, one horse, for $41, and one mowing machine, for $28. The executor himself bid off one spring wagon for $38, and on the same day sold it to Robinson. On the day after the sale, the executor prepared a note for the

amount of Robinson's purchase, and requested him to sign it, and furnish an indorser. Robinson did not do so. A short time thereafter the executor again presented the note to Robinson, who then refused to furnish an indorser. At the same time Robinson was indebted to the executor personally, to the amount of $125; and on December 23, 1891, the executor took a chattel mortgage upon this property, which Robinson had so purchased, to secure his own individual debt. After Robinson had refused to give the indorsed note the executor sold his mortgage and claim thereby secured to one Dake. Nothing further appears to have been done in this matter until the executor was cited to show cause why he should not judicially settle his accounts. Thereupon the executor procured Dake to satisfy said mortgage, and to take another upon Robinson's crops, and thereupon took the property back from Robinson, made another public auction, and sold the horse thereat for $25, the mowing machine for $12, and the spring wagon for $28.35, or $41.65 less than the same property sold for at the first sale; and contestant urges that the executor should be charged with the deficiency. If the executor, immediately upon the refusal of Robinson to give the indorsed note, had reclaimed and resold the property, he could not have been subject to the imputation of bad faith, nor held accountable for any deficiency. But permitting said property to remain in Robinson's possession until the month of June, 1892; allowing him to use the same, thereby diminishing its value; knowing all the time that Robinson was irresponsible, yet holding a chattel mortgage upon this identical property to secure his own debt; doing nothing to enforce collection of the claim, or to recover said property—presents an entirely different phase. An executor is bound to exercise active diligence in the management of the estate, and if loss occurs through his negligence, he becomes personally liable as for a *devastavit*. Harrington v. Keteltas, 92 N. Y. 40; Hasbrouck v. Hasbrouck, 27 N. Y. 182. In this case the executor should account for the entire amount said property sold for at

the first sale. The account filed should be modified in the particulars suggested, and a decree entered judicially settling the same as so modified.