#### (Surrogate's Court, Saratoga County. September, 1903.)

**1. ADMINISTRATOR—ASSETS—SHRINKAGE IN VALUE—LIABILITY.**
　　Decedent's estate consisted largely of stocks, and 50 days after the appointment of administrators there was a general decline in the market, and there was no recovery during the following year. Because of prospective loss the administrators did not sell, but applied for a judicial settlement of their accounts. *Held*, that they were not chargeable with the stocks at their inventory value, but would be made an allowance to cover the decrease in the estate as not having occurred by their fault.

**2. SAME—CONVERSION OF ASSETS.**
　　An administrator, in determining the time for converting the assets of the estate into money for the purpose of distribution, is not controlled by the directions of one of the next of kin, even to the extent of her share in the estate.

**3. SAME—DISTRIBUTION IN KIND.**
　　Where the assets of an estate consist largely of stocks and bonds, ·a distribution of the assets in kind will be ordered in order to avoid loss to the next of kin as far as possible.

In the matter of the judicial settlement of Caroline B. Thompson, administratrix, and Thomas Kerley, administrator of Frank Thompson, deceased. Decree of distribution rendered.

See 83 N. Y. Supp. 983.

John H. Burke, for administrators.

Goodwin, Thompson & Vanderpoel, for Rhoda Thompson, Edward D. Thompson, and Mary T. De Forest.

Guthrie, Cravath & Henderson, for John W. Thompson, George L. Thompson, and Annie A. Thompson.

James L. Scott and Edgar T. Brackett, for Frances L. McLean.

LESTER, S. The only questions raised by the parties to this proceeding are whether the administrators should be allowed for the depreciation in the value of the stocks and securities constituting the bulk of the estate which has occurred since the estate came into their hands, and since the inventory was made and filed, and whether the decree should direct the delivery of unsold securities to the parties entitled to distribution in lieu of the money value of the property.

Letters of administration were granted on the 20th day of August, 1902. The property and securities constituting the estate came into the possession of the administrators on the 9th day of October following. The inventory was completed on the 24th of January, and filed on the 26th day of February, 1903. By the inventory it appears that the assets of the estate amounted to $1,283,409.91. Soon after the 9th of October, 1902, the market value of the securities began to decline, and the progress in this direction continued after the making and filing of the inventory. The administrators claim that under the statute (Code Civ. Proc. § 2729) which provides that administrators shall not sustain any loss by the decrease, without their fault, of any part of the estate, but shall be allowed for such decrease on the set-. tlement of their accounts, an allowance should now be made for the decrease of the estate in their hands. The contestant objects to such an allowance, and claims that the administrators are chargeable with

the assets at the values at which they were inventoried. The duty of an administrator is to convert the estate of the deceased into money as soon as it can be reasonably done, to pay the debts, and make distribution. In accomplishing this he is to exercise the diligence and prudence which in general a prudent man of discretion and intelligence in such matters employs in his own like affairs. He may find among the assets of the estate that have come to his hands stocks of a somewhat dangerous and speculative character, subject to great and sudden fluctuations of value, which it is his duty to care for and dispose of with all their inherent risks on the one hand and possibilities on the other. It is not the duty of an administrator at once to dispose of such assets without regard to the market, or the demand for them, or the ruling prices, or the possibility of an advance in their value. Assets of this character ought not to be hastily sacrificed, nor unwisely and improvidently held. When there is a direction to sell, reasonable time must be given, and what that is must be determined in each case by its own surroundings. There is and there can be no rigid and arbitrary standard by which to measure the reasonable time within which the discretion of an administrator must operate. · Where no modifying facts are shown to shorten or lengthen the reasonable time, the period of 18 months may serve as a just standard; yet it might be the duty of an administrator to sell earlier than that, or to wait longer, according to the circumstances and exigencies of the particular case. Hasbrouck v. Hasbrouck, 27 N. Y. 182; King v. Talbot, 40 N. Y. 76; Weston's Estate, 91 N. Y. 502. In the present case, letters of administration were issued on the 20th of August, 1902. It is said that, if the stocks had been sold by the 9th of October following, there would have been no loss upon them. If facts had been known· to the administrators which would have formed a reasonable ground for the expectation of a depreciation in the market value of these securities, it might have been their duty to dispose of them within this period of 50 days; but no such facts appear. It is to be noted that the depreciation was not in a single stock, through some particular loss, or as the result of some mismanagement of the affairs or the unsuccessful operation of the business of a particular corporation. It was a depreciation of the stocks of several different corporations, and was due to influences that affected the market generally. To foresee such periods of general depression, or periods when high prices prevail, is the constant effort of the keenest intellects in the financial world, but, notwithstanding their tireless vigilance and efforts, stimulated by the hope of great gains, they frequently find such knowledge too high for them. The law does not require such prescience of administrators.

After the market prices of the stocks involved had taken a decline without any apparent reason that affected their intrinsic value or the capacity of the corporations to earn dividends, it would seem that the administrators cherished a reasonable hope of a restoration of prices that justifies their having refused to part with the stocks at the depressed prices within the period that has now elapsed since the granting of letters. They had the right, too, to contemplate the probability that the parties would agree to a distribution in kind, as some of the parties had expressed a desire to do, or that the court would

order it, as it has the power, upon the judicial settlement of the administrators' accounts, and that a sale of the stocks in question would thus be obviated. The fact that they applied for a settlement of their accounts within the period of a year indicates their expectation that such a distribution would be agreed to or ordered, and an intention otherwise to have the remainder of the period of 18 months within which to convert the estate into money for the purpose of distribution. A judicial settlement may be had before the estate is ready for distribution, unless distribution in kind is agreed to or ordered, as is indicated by the statute, which provides that, where an account is judicially settled, "and any part of the estate remains and is ready to be distributed, * * * the decree must direct the payment and distribution thereof." · Code Civ. Proc. § 2743.

A question to be considered is whether the letter from Mrs. McLean imposed any different duty or responsibility upon the administrators. I think it did not. This letter called upon the administrators to convert into money forthwith all the securities which came into their hands, except the Rensselaer & Saratoga stocks and bonds, the Ballston Spa Bank stock and the Douglass county bonds, and it contained, in addition, the statement:

"There is no propriety in your holding these securities, and they should have been realized on at the time you took possession of them. We do not want to have any contention about holding you responsible for shrinkage, but we certainly do not desire to have these securities held any longer."

This communication conveyed no facts upon which the administrators could base intelligent action. It was, so far as appears, but the guess of one of the beneficiaries as to the course of the stock market. It proved to be correct. As a guess whose correctness was proved by the event, it is interesting; but it was not entitled to control the action of the administrators. They were at all times bound to act upon their own judgment, based upon the facts within their knowledge. The next of kin cannot impose upon administrators the burden of following their own desires and wishes as to the management of the fraction of an estate that is supposed to represent the distributive share of each. It is not certain who stand in the position of next of kin and who are entitled to a share of the estate until the surrogate adjudicates upon that question in the decree. If, on the request of one who claims a distributive share, a portion of the securities representing his supposed interest should be sold, and the remainder should subsequently decline, it is doubtful if such claimant could establish the right to receive the price of the part so sold, and leave the loss on the remainder of the assets to be borne by the remaining next of kin; and if, on the other hand, the value of the remainder of the securities should largely appreciate, it does not seem certain that he could not lawfully claim his portion of the resulting increase. The estate as a whole is in the custody and authority of the representatives who must act on their own judgment for the good of all. They cannot evade their responsibility, nor should they abdicate their authority; and when they exercise the best judgment they possess they have performed their duty and should be protected.

I am satisfied that a sale of the securities at the present time, for the purpose of payment or distribution, would cause a loss to the par-

ties entitled thereto. Most of the distributees desire to accept a distribution in kind. If such a distribution should be made to all, Mrs. McLean could doubtless convert her share into cash to as good advantage as the administrators could convert it for her; and such distribution would obviate some practical difficulties that might arise should the others take their shares in securities and Mrs. McLean take her share in money. It seems to me for the interest of all parties that distribution in kind should be directed. A decree should therefore be made providing for a distribution in kind to all the next of kin, and allowing the administrators for the depreciation in the value of the securities which has occurred since the inventory was made. If the parties do not agree upon the value of the securities and execute a consent fixing it, an order may be submitted for an appraisement under oath, as provided by the statute, in order that the terms of the decree may be settled.

Decreed accordingly.