NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—August, 1886.

MATTER OF PEYSER.

*In the matter of the estate of* DAVID M. PEYSER, *deceased.*

The per diem allowance which, under Code Civ. Pro., § 2562, the Surrogate may award to an executor or administrator, for counsel fees in prepar-

ing his account, is not intended to compensate the accounting party for his personal services in such preparation, but is to enable him to secure legal assistance and advice when needed for putting the account into proper form.

An executor is liable for interest on commissions retained without judicial allowance.

An executor who employs and pays counsel for legal services in the course of his administration will not be reimbursed out of the funds of his testator's estate, unless a proper regard for the interests thereof seemed to make such services necessary at the time when they were invoked.

The responsibility of an executor for paying, without protest, a doubtful claim of the U. S. government—declared.

HEARING of exceptions to report of referee, to whom were referred the account, and objections thereto, of the executor of decedent's will, in proceedings for judicial settlement.

CHARLES WEHLE, *for executor.*

SCUDDER & CARTER, SALOMON & DULON, TOWNSEND, DYETT & EINSTEIN, HENRY WEHLE, ABRAM KLING, C. BAINBRIDGE SMITH, *and* S. MERRIHEW, *for other parties.*

THE SURROGATE.—I shall pass upon the several exceptions to the findings of the referee herein in the order in which the referee discusses in his report the matters to which such exceptions relate.

*First.* The finding in respect to the form of the executor's account as it was originally presented is important only as it affects the question of costs and counsel fees to be awarded him in the decree to be entered in this proceeding. The per diem allowance, which under section 2562 of the Code of Civil Procedure the Surrogate may in his discretion award an executor or administrator for counsel fees in preparing his account, is not intended, it seems to me, to compensate the accounting party for his personal services

in such preparation. For such services he is supposed
to be rewarded by his statutory commissions. It is
the purpose of § 2562 to enable him without personal
expense or loss to secure legal advice and assistance
whenever such advice and assistance are needed for
putting his account into proper form.

The referee has found that this executor was justi-
fied in presenting his account as it was originally filed.
If by this finding he means that the executor did not,
by pursuing that course, subject himself to a penalty,
I agree with him. No one of the contesting parties is
now in a position to claim that costs should be charged
against the executor because of the incomplete
fashion in which he disclosed at the outset his dealings
with this estate. It was in the power of any person,
who was dissatisfied with that showing, to apply to
the Surrogate for relief before the submission of the
account to a referee. No such application was made,
and no objector therefore can be sustained in contend-
ing that the expense attendant upon the reformation
which was subsequently found to be necessary should
be borne by the executor personally. It does not fol-
low, however, that the accounting party should now
be treated, as regards his claim for costs and counsel
fees, as he would have been entitled to be treated if
his account as first presented had been sufficiently ex-
plicit. He might well, it seems to me, have separated
in the beginning the *corpus* of the estate from the in-
come. It would very likely have happened that the
referee or the Surrogate might have directed a trans-
fer of items of the account from one schedule to an-
other or the striking out of other items altogether,

but the executor should in the first instance have rendered, according to his best judgment, some portion at least of the services which have here been practically performed by the referee. The question raised by this exception will be further and more particularly considered upon the settlement of the decree.

\* \* \* \* \* \* \*

*Third.* I sustain the referee in his findings that the executor is entitled to a single commission only upon the *corpus* of the estate, and that he was not entitled to retain such commissions before their allowance by the Surrogate. But I hold in opposition to the referee that he must be charged with interest upon commissions improperly retained.

\* \* \* \* \* \* \*

*Seventh.* Certain objections to the probate of this testator's will were filed upon its presentation for probate, but these objections were subsequently withdrawn and the will was established without controversy. In anticipation of a contest the executor had employed counsel and made preparation for trial. The attendant expense is found by the referee to be a charge upon the principal estate alone. When the executor's account was first submitted, objection was interposed to his claim to be credited with this disbursement upon the ground that it was excessive in amount. That objection was afterwards withdrawn, but the objectors now insist that the life estate should bear a part of this burden.

The evidence discloses that when the sum in question was paid by the executor to his counsel the latter agreed to render legal service in all matters relating

to the estate that might subsequently present themselves in the course of its administration, and to claim no compensation therefor except as regarded proceedings in the courts. It also appears that, from time to time thereafter, the executor frequently sought and obtained the advice of his counsel in unlitigated matters. No charge seems to have been made for these consultations during the continuance of the life estate. It is not to be presumed that the services of counsel were rendered gratuitously, and as one of the considerable items of his first bill was his charge for a retainer, I cannot avoid the conclusion that some portion of the amounts received by him should be charged against the life estate. I do not find in the testimony the requisite *data* for making a proper apportionment, and unless some basis for such apportionment can be agreed on, there must be a further investigation of this matter before the referee.

*Eighth.* At the time of the testator's death, there was in force a law of the United States (sections 124 and 125, act of June 30th, 1864, as amended by act of July 13th, 1866, 14 U. S. Stat. at Large, 140), under which legacies of personal property passing by will to a person who was a stranger to the blood of a testator, were subject to a tax of six per cent., to be paid by his executor. This tax was declared by the statute to be "due and payable whenever the party interested in such legacy should become entitled to the possession or enjoyment thereof," and the statute further provided that such tax should be "deducted from the particular legacy," on account of which the

same should be charged.   By the act of July 14th, 1870, the tax referred to was repealed from and after the 1st day of October of that year.   In September, 1870, the Commissioner of Internal Revenue issued instructions to his subordinates to the effect that a legacy passing from a person dying before October 1st, 1870, became subject to tax whenever the legatee had or should become entitled to possession thereof. This interpretation of the statute was afterwards sustained by the District and Circuit courts of the United States for this district, but was subsequently overruled by the Supreme court of the United States (Mason v. Sargent, 104 *U. S.*, 689).

The law was thus settled, that where a legatee under a will had not become entitled in possession before the 1st day of October, 1870, no tax could be collected on account of his legacy.   On the 8th day of October, 1875, the day of the death of the testator's widow, Mrs. Brandis, an adopted daughter of the testator, but a stranger in blood, became under his will entitled in possession to a legacy of $15,000.   A collector of internal revenue demanded from the executor as a tax upon the legacy the sum of $900.   After some objection and delay the executor paid it.   The referee has found that he is entitled to credit for such payment out of the testator's principal estate, notwithstanding the positive provision of the United States statute that the tax upon a legacy should be deducted from the legacy itself.   It is urged by the executor's counsel that this charge against the principal estate should be sustained because the amount in

question was paid to prevent proceedings which the internal revenue officers threatened to take against the executor, the prosecution of which proceedings would, it is claimed, have been seriously detrimental to the estate. The only penalty that the executor would have incurred by lawful resistance to the claim of the Government was a penalty not exceeding $1,000, which might have been imposed on him personally. If he had taken the precaution to pay the alleged tax under protest, and had seasonably presented a claim to the Commissioner of Internal Revenue for its refunding, the United States would, of course, have returned the amount paid after the decision of the Supreme court that its payment had not been lawfully exacted. It is perhaps not too late even now for the executor to take steps which will enable him to recover this $900.

After much hesitation, I feel compelled to find that under all the circumstances he was not warranted in making the payment without protest, and that having made no proper effort to recover the amount paid, he cannot be allowed credit therefor in his accounts. It is clear that to take this $900 from the legatee would be unjust. She was not consulted in the premises and gave the executor no instructions; he cannot be treated as her agent in making the payment. She was entitled to the entire legacy of $15,000 given her by the testator. That legacy was never subject to a tax, and she should receive it without abatement. The referee does not state the reasons for his conclusion that the $900 should be charged to the principal

estate.   Counsel for Mr. Brandis suggests some considerations why that course should be pursued.   But while I have no reason to doubt that the executor acted in good faith, it would, I think, be more just and equitable to refuse to credit him with this disbursement than to charge it to any of the beneficiaries under the will.

\*      \*      \*      \*      \*      \*      \*

With the foregoing modifications, the referee's report is confirmed.