of the county of New York, notwithstanding the fact that the property is situated partly in Kings county, and would thus give to the comptroller of this county a commission due the county treasurer of Kings, and claims that the only way to protect this estate against claims for commissions due the county treasurer of Kings, and to afford protection to a future purchaser, will be to amend the report of the appraiser by separating the value of the two pieces of property, and assessing each one. Counsel for the comptroller asks for the confirmation of the report, and claims that the words "proper county" relate to the county of the surrogate first acquiring jurisdiction under section 15, and argues that under this section the surrogate to whom the first application for the appointment of an appraiser is made has full jurisdiction, and that it was not the intent of the legislature to impose on any surrogate the task of investigating what property the estate of decedent consisted of, and where such property was situated, before appointing such appraiser, and calls attention to three cases where real estate in counties other than New York was appraised by the appraiser appointed in this county, and the reports confirmed. The appraiser has assessed the interest in all the real property of which the decedent was seised at her death, and calls attention to its being situated both in New York and Kings counties, and reports the value of both as aggregating $2,246.41.

There does not appear to be any difficulty in this matter. The words "proper county" evidently refer to the county of the surrogate first properly acquiring jurisdiction; and the surrogate of that county retains such jurisdiction throughout all proceedings, even should there be real estate in every county in the state. The act expressly provides for the necessary traveling expenses of the appraiser. By obtaining a receipt from the comptroller of this county and filing it in the clerk's office of Kings county, it is conclusively shown that the tax upon the real estate there has been paid, thus releasing the estate from any lien upon it on account of said tax, and effectually preventing the district attorney of Kings county from successfully prosecuting any proceedings for its collection. By section 17 it is provided that if the district attorney have probable cause to believe a tax is due and unpaid, he shall proceed, etc. A complete answer to all such proceedings would be production from the county clerk's office of a certified copy of the receipt of the comptroller. That would also protect the purchaser. The question of commissions between the county treasurer of Kings and the comptroller of New York does not enter into this matter at all. The surrogate, in confirming the report of the appraiser, simply assesses and fixes the tax, but does not order it to be paid to the comptroller of New York county or any one else. An order should be entered confirming the report of the appraiser, and assessing and fixing the tax.

---

### In re KEITH'S ESTATE.

### In re DAILEY'S ESTATE.

(*Surrogate's Court, New York County.* February 14, 1889.)

WILLS—LEGACY TAX—CHARITABLE CORPORATION.

   Rev. St. N. Y. pt. 1, c. 13, tit. 1, § 4, and title 4, § 1, exempting the property of all incorporated companies, except moneyed and stock corporations, deriving an income or profit from their capital or otherwise, from taxation, do not exempt a legacy to a "society for the prevention of cruelty to animals" from the legacy tax, which is a tax only on the passing of property, and not on the property itself.

The wills of Mary Ann Keith and Emily G. Dailey each gave a legacy to the American Society for the Prevention of Cruelty to Animals, and the question as to whether they were taxable under the collateral inheritance and legacy tax act, came before the surrogate, who heard both matters together. The society filed objections to the appraiser's report.

*Graham McAdam*, for comptroller.  *Horace Russell*, for objector.  *W. W. Buckley*, for B. W. Barlow.  *J. S. Woodward*, for C. P. Buckley.  *Brewster Kissam*, for G. A. Dailey, executor.

RANSOM, S.   In each of these two estates a legacy was left to the American Society for the Prevention of Cruelty to Animals, which legacy the appraiser has reported as subject to the tax.   The society contends that it is not subject to tax, upon the ground that it is a charitable corporation, and as such is exempt under subdivision 7, § 4, tit. 1, c. 13, Rev. St., which exempts "the personal estate of every incorporated company not made liable to taxation on its capital in the fourth title of this chapter."   Section 1, tit. 4, reads: "All moneyed or stock corporations, deriving an income or profit from their capital or otherwise, shall be liable to taxation in the manner hereinafter prescribed."   The society claims to have no capital stock, to earn no dividends, to declare none, to pay no tax on personal property, and therefore holds that it comes within the purview of the act exempting certain corporations.   It insists upon its charitable character, and argues, with considerable rhetorical force, upon the magnificent charity established by Mr. Bergh in supplying a much-needed moral education to the community.   On the other hand, it is insisted that the society is not one of the "societies, corporations, and institutions now exempted by law from taxation," *i. e.*, exempted as corporations and institutions not inferentially "exempt," but exempted by special act, or coming plainly and squarely under the general act.   This society was chartered by chapter 469, Laws 1866, as amended by chapter 375, Laws 1867, and the act passed March 7, 1871; but there is no provision in its charter exempting it from taxation.   It can only be exempted by implication, if at all.   The general "act for the incorporation of benevolent, charitable, scientific, and missionary societies" was enacted in 1848, and undoubtedly relates only to human beings.   Certain charitable institutions are exempt, but such institutions relate to human beings, and it is for their benefit and advantage that such institutions are formed and fostered and encouraged by the state by relief from taxation.   The Society for the Prevention of Cruelty to Animals is a good and humane organization, and one worthy of encouragement and help; but it does not seem to have been the intention to exempt it from taxation.   The fact that a portion of the property owned by the society is exempt from taxation does not signify.   This is a tax imposed upon the passing of property,—a succession tax,—and, though the property might become exempt from general taxation after having passed, the legislature has an undoubted right to tax it *in transitu*, and evidently so intended.   The society seems to have slept upon its rights, for as far back as 1887 Surrogate ROLLINS assessed and fixed a tax upon a legacy left to the society, which tax was paid without objection, and has never been appealed from.   Recently, also, a bill has been introduced into the legislature of this state exempting the society from taxation under this act.   Neither of these two steps would have been taken, I think, had the society been satisfied of its exemption from this tax.   An order in each case should be handed up, confirming the report of the appraiser and assessing and fixing the tax.

---

## In re MULL'S ESTATE.

*(Surrogate's Court, New York County.  January 9, 1889.)*

EXECUTORS—ACCOUNTING—PROBATE PRACTICE—REHEARING.

Code Civil Proc. N. Y. § 2481, subd. 6, authorizing a surrogate to open, vacate, or modify his decree, or to grant a new hearing for fraud, newly-discovered evidence, or other sufficient cause, does not entitle a party to relief from the consequences of his own neglect, and therefore a new hearing will not be allowed an accounting executor who has been at all times during the pendency of the proceedings apprised of the claims made against him, and of the issues of the case, and who has not been diligent in the preparation of his evidence.