---

## In re COLLYER'S ESTATE.

### (Surrogate's Court, Westchester County.   September, 1889.)

1. EXECUTORS AND ADMINISTRATORS—ACCOUNTING—NECESSARY EXPENSES.
    Under 2 Rev. St. N. Y. p. 93, § 58, as amended by Laws 1863, c. 362, § 8, (Rev. St., 8th Ed., p. 2564,) which provides that, on an accounting by executors and administrators, a reasonable allowance shall be made for their actual and necessary expenses, an administrator, on the settlement of his account, will not be allowed sums paid to counsel for advice as to the selection of an administrator from among several of the next of kin.

2. SAME—COUNSEL FEES.
    Nor is he entitled to fees paid counsel for retainers, and for procuring evidence in cases brought against the estate, nor for fees for the execution of the administrator's bond, and for attendance and advice on the making of an inventory of the estate.

3. SAME—LOST WILL—INTERVENTION.
    An administrator, in his official capacity, has no interest that entitles him to intervene in proceedings to establish a lost will of his intestate, though the petition prays that his letters be revoked, as the revocation will follow as a matter of course on the establishment of the will, (Code Civil Proc. N. Y. § 2684;) and, on settlement of his accounts, he will not be reimbursed his expenditure for counsel fees in these proceedings.

4. SAME—ASSISTANT COUNSEL.
    Where, in a contest over a claim against the estate, the administrator has employed an able attorney, who has not asked assistance, the administrator will not be allowed payments made to an assistant attorney of but a few years' practice, who has become indirectly employed in the case, except for services that would otherwise have been necessarily performed and charged for by the attorney.

5. SAME—EXCESSIVE FEES.
    Where several suits are brought against the estate, all of which involve the same point, but one of which is tried, and the law governing them has already been settled by the court of appeals, a charge in excess of $500, as counsel fees, is unreasonable.

6. SAME—COMPENSATION OF ADMINISTRATOR.
    A charge by the administrator for services relating to the accounting will be disallowed, as his compensation for services rendered the estate must be fixed by the surrogate at the close of the proceeding.

7. SAME—COUNSEL FEES.
    In an action against the estate, tried before a referee, where the administrator's attorney neglected to plead the statute of limitations, a charge of $350 for the attorney's services in applying to the special term for leave to amend, and in appealing to the general term from an order of denial, will be disallowed as an unnecessary expense.

8. SAME—PER DIEM ALLOWANCE.
    In an action tried before a referee, $10 per day is a liberal counsel fee for days on which no proceedings were had other than to adjourn.

Charles L. Collyer, after consultation with his four brothers, assisted by counsel, was appointed administrator of the estate of his deceased sister, Elizabeth Collyer. Subsequently George B. Collyer, one of the brothers, presented a claim for board and house rent furnished the deceased, amounting to upwards of $10,000. This claim was finally disallowed by the court of appeals. See 21 N. E. Rep. 114. In this litigation, which is referred to as the "Gifford Reference" or "Board Case" in the surrogate's opinion, the administrator employed Calvin Frost to represent the estate, to whom he paid over $2,000 for his services. He also paid another lawyer, Seaman Miller, $3,530 as assistant. In addition, Miller was paid $3,525 for other services performed for the administrator. The administrator now applies for a judicial settlement of his accounts. For a litigation arising during the course of the administration, see 3 N. Y. Supp. 310.

*Calvin Frost* and *Seaman Miller*, for administrator.   *Richard L. Sweezy*, for George B. Collyer.   *H. M. Collyer*, for M. S. Rich and others.   *Abraham B. Havens*, for Mrs. Beckwith.   *Edward Wells*, for John L. Collyer.

COFFIN, S.   One only of the next of kin has been the main cause of litigations which have produced the fruits of this controversy.   He is now naturally unwilling to pay his share of the cost of his defeats, to any greater extent, at all events, than the law will sanction.   At the same time, he is not alone in resisting the allowance of the credits claimed by the administrator for payments made to counsel in the various litigations which he has instituted.   Others of the next of kin agree with him in this respect, if in nothing else.   But here we have nothing to do with the causes which have rendered it necessary to deal with the questions presented for consideration, but simply to determine whether the administrator has abused his trust, however ignorantly, or not.   It is, perhaps, unnecessary to remark that this does not involve the consideration of just compensation as between attorney and client, but that of necessary disbursements as between the administrator and the next of kin.   A client may be made liable to pay his attorney for non-professional services performed at his request which he himself could perform; while an administrator or an executor has duties imposed upon him by law to fulfill which must be fulfilled by him, and, if he employ another to discharge them, he must pay him for his work.   It is equally his duty in making necessary disbursements in the course of administration to see to it that they do not exceed what appears to be just and reasonable.   In this connection it may be stated as a curious fact that the administrator seems to have paid the sums in litigation from time to time, in amounts demanded, and without any items furnished.   He is of so trustful a nature that he would probably have paid more without question, had more been demanded.   Taking up the questions submitted in chronological order as far as practicable, the first relates to sums paid counsel for advice, etc., prior to the granting of letters of administration. If one who is next of kin consults counsel in regard to the selection of an administrator from among several equally entitled, and there is a consultation among them, and he is finally agreed upon as the one who shall take the letters, he cannot charge, as against the estate, what he paid the counsel for his services in that regard; especially in this case, where another, equally entitled, presents the petition praying his own appointment, and where no contest in regard thereto occurs before the surrogate.   It is not a just and necessary expense of administration, as he was not then administrator, and it had not been determined that he should be.   2 Rev. St. (8th Ed. p. 2564,) p. 93, § 58, as amended by Laws 1863, c. 362, § 8, provides that on the accounting "in all cases such allowance shall be made for their [executors' or administrators'] actual and necessary expenses as shall appear just and reasonable."   This was not an actual and necessary expense incurred by him as administrator.   He did not then propose to take the office.   Each of the others entitled to it who had counsel on the occasion would have just as much right to have them paid out of the estate as he had.

In view of the fact that an inventory is not conclusive against either party, it is difficult to see how the payment to counsel for attendance and advice on the making of it can be regarded as a necessary expense.   In view of the further fact that, at most, an inventory is a mere guide, subject to correction by either party on the accounting, the cost of the attendance of counsel at its making does not appear to have been a just or reasonable expense to be incurred in the course of the administration.   Ignorance in the matter on the part of the administrator will not justify it.   He must, in such a case, pay the penalty of his ignorance out of his own pocket.   He cannot expect the estate to educate him.   Without counsel, however he may have blundered in the matter, he would have been set right on the accounting.   A retaining fee

of $150 is claimed as a credit for the payment to one counsel, and $250 as a counsel fee paid to another. In *Re Levy's Accounting*, 1 Abb. N. C. 182, Judge ROBINSON, of the New York common pleas, held that, in an accounting by an assignee under a voluntary assignment, the county judge is controlled by such statutory and common-law rules, as to allowances for disbursements, as prevail in proceedings for accountings before a surrogate for the settlement of the estate of deceased persons, and refused to allow a counsel fee paid by the assignee. This was approved by DALY, C. J., in *Re Johnson*, 10 Daly, 123, and he also declared that "the court does not recognize such a thing as a retainer to counsel by an assignee." A retainer or counsel fee paid to an attorney is not for services rendered, but to prevent an employment of him by the adverse party. And in *Re Carrick*, 13 Daly, 181, it is held to be the duty of the assignee to prepare his bond and obtain his sureties. The attorney may be required to see that it is properly executed, but that is all. In the case of this administrator's bond, it was executed, acknowledged, and justification made before me, and my approval was indorsed thereon, as required by section 812 of the Code, so that there was no occasion for services of counsel in regard to its proper execution. In *Re Johnson*, *supra*, in reference to the inventory, the learned judge says: "In my judgment, the assignee himself could have prepared these inventories and schedules; and, if assignees cannot perform ordinary duties of this kind, they should not accept such a trust." Here the administrator had the aid of two competent appraisers, one a young but intelligent attorney, and the other for many years a justice of the peace and justice of sessions. These principles are applicable to this case, and must be followed in disposing of the items to which they relate.

In 1885 an accounting proceeding instituted by the administrator was interrupted and suspended by the presentation of a petition by George B. Collyer, alleging that deceased made a will which was lost or destroyed, and praying that a citation should be issued to the next of kin (who were named) to attend the probate thereof, and that thereupon the letters of administration issued be revoked. No citation was issued, as the petition was presented during the session of the court in the accounting proceeding, and the next of kin named in the petition, being present, either in person or by attorney, at once appeared in the latter proceeding. Had a citation been issued, it would have been properly directed only to the next of kin named in the petition. But it seems that the administrator, Charles S. Collyer, entered his appearance, not only as next of kin, but also in his official character. In the latter capacity he had nothing to do with it. It is true the petition prayed for the revocation of his letters, but that was unnecessary, as, had the lost will been established, Code, § 2684, following 2 Rev. St. p. 78, § 46, provides that the decree admitting it to probate must revoke the former letters. The petitioner did not seek the revocation of the letters on any other ground. Had an application been made to revoke them on any of the grounds provided for in section 2685, the administrator would have been cited, and could have appeared, as such; but here he could be properly cited and appear only as a next of kin. If it be said that he was interested as administrator to defeat the proving of the alleged lost will, because of his claims for commissions and expenses as such, it is answered that he would have recovered them, had such will been established, on his accounting with the executor thereof. He had no interest, therefore, which could warrant his intervening as administrator. He stood precisely on the same footing as the other next of kin who resisted probate, and had no more right than they had to be reimbursed his expenditures for counsel out of the funds of the estate. All who appeared by counsel, including himself, were awarded separate bills of costs by this court to be paid by the proponent. The items embraced in his account for moneys paid his counsel in that matter, aggregating $1,360, must therefore be disallowed. Also the sum of expenses paid his attorney, amounting to $184.64, which in-

cludes an item of $124.50 for stenographer's fees, which was probably recovered as part of the costs in that case. It seems also that costs were awarded in the appellate courts, but we do not find that any of them are credited by the attorney as against the charges he made for services rendered the administrator.

As the well-settled rule is that, in order that a court shall be justified in allowing disbursements to an executor or administrator on his accounting, it must be made to appear that they were not only actual and necessary, but just and reasonable. Let us glance for a moment at the facts and circumstances relating to what is referred to as the "Gifford Reference" or "Board Case," in so far as relates to the claim of the administrator for what he paid to his attorney and to his counsel in that case. The attorney of record for the administrator had been a practicing lawyer for upwards of 40 years, was of wide and varied experience, of great industry, intellectual force, power of discrimination and acumen, and hence of an enviable reputation. Another lawyer, a connection of the parties by marriage, who had been practicing but four years, had achieved no considerable degree of repute in his profession, but of average ability, managed to become indirectly employed in the case to assist the attorney. It does not appear that the administrator sought his services, nor that any attorney had signified any desire for assistance. The administrator, who had spent much of his life in China, had little knowledge of such matters; and being an honest, guileless man, finding that the assistant was present and acting in his behalf at the next meeting before the referee, in conjunction with his attorney, raised no objection, and finally came to recognize him as regularly in the case, where he continued to the end, and for which he has paid him upwards of $3,000, besides more than $2,000 to his attorney in that case. The question is, where was the necessity of such an expense in so employing such a lawyer to assist such an attorney? Can we say, under this state of facts, that the expense was necessary, or that it was just and reasonable? Two elements are essential to the allowance of an expense claimed to have been incurred by an executor or administrator. It must first appear that it was necessary. If that is not established, the inquiry ends; if it is, then the justness and reasonableness of the amount must be considered. While the employment of the assistant was unnecessary, yet he performed services which would otherwise have been necessarily performed and charged for by the attorney, and to that extent there is an apparent, though not real, equitable modification of the statute rule. There were, as above stated, services performed by the assistant which seem to have been needful, and payment therefor assumes the character of necessary expenses. It is deemed that an allowance of $2,000 to the administrator in that regard, including the efforts made to set aside the order of reference, will be just and reasonable.

Thus far, only questions having a legal aspect have been the subject of consideration. It now becomes necessary to examine briefly, to some extent, as to the justness and reasonableness of the charges paid one of the attorneys. Without going into details as to what are styled the "trust" or "bank-book" cases, it must suffice to say that the intestate had in her life-time deposited, in various savings banks, sums of money in her name "in trust" for various relatives whose names appear on the several pass-books. Actions were instituted by these persons against the administrator. They were all of the same character, and presented almost solely a question of law. For the services of his attorney in those cases the administrator paid him about $870, which he now seeks to have allowed him. I do not propose to examine each of the charges as disclosed by the items furnished, but take occasion to remark that "searching for evidence" is not regarded as an item of necessary expense to be paid to a lawyer, as between the administrator and the estate. That rather appears to be the client's duty, but, if he see fit to instrust it to his lawyer to

do, he, and not the estate, should pay him.  According to the evidence, only one of the eight cases was tried, all depending on the same principle, the determination in one case disposing of all, with the exception of one other, which was tried.  In all, the administrator was defeated.  It is questionable whether he was justified in resisting the claims of the plaintiffs, as the court of appeals had already settled the law on the subject involved.  Any allowance beyond $500 for the expenses incurred in these actions is adjudged unjust and unreasonable.

The items relating to this accounting proceeding, commenced in 1885, amounting to $220, must be disallowed, as the measure of compensation which the law permits the administrator to recover for that service against the estate must be fixed by the surrogate at the close of the proceeding.

In 1887, George B. Collyer, who was one of the sureties in the original bond of the administrator, petitioned to be released as such, and the administrator was required by law to furnish a new bond.  He seeks to be allowed therefor the sum of $200, which he paid to his counsel in that matter.  He was bound to furnish such new bond or have his letters revoked.  It was his business, and not that of the next of kin, to defray the expenses he saw fit to incur, other than his own personal expenses.  This point has been substantially hereinbefore determined.

In June, 1886, George B. Collyer, one of the next of kin, commenced suit against the administrator to recover the value of certain United States bonds of the alleged value of about $20,000, which bonds he stated in his complaint to have been taken and converted by the intestate during and prior to the year 1874, when he deprived her of further access to his papers.  She died in 1883. The defendant by his attorney interposed an answer mainly denying the allegations.  The cause was referred to ex-Judge HOOPER C. VAN VORST.  After proceedings several days before him, the plaintiff, who had served a bill of particulars, moved to amend the same by inserting other bonds in the place of those originally described, because he had substituted others in their place prior to the alleged conversion,  The amendment was allowed.  Then the defendant asked leave to amend his answer by pleading the statute of limitations to the complaint and bill of particulars as amended.  The referee decided that he should have leave to plead the statute to the amended bill of particulars, but thought he had not power to allow him to so amend as to have complaint, and denied the application, but with leave to apply at special term for the desired relief.  A motion was then made by defendant's attorney at special term accordingly, and denied.  An appeal was then taken by the same attorney to the general term, which modified the order of denial of the special term, granting the same permission to plead the statute as to the amended bill which the referee had offered to grant, and which he declined to accept. The charges of the attorney for the administrator for services in that side proceeding, and which he has paid, amount to $350, and he seeks to have them allowed as necessary expenses.  It is quite plain that the same reason existed for pleading the statute originally as arose after the bill of particulars had been thus amended; and it would seem to follow that the whole side proceeding had its origin in the remissness of the attorney in pleading it in the first instance, and therefore that the charge therefor, so paid, was an unnecessary expense.

There is also an aggregate of charges by the attorney for procuring evidence of $540.  If what has already been laid down is a fair and proper rule in that regard, then this sum must be disallowed as a necessary expense by the administrator.  The evidence also shows that the attorney charged at the rate of $20 per day for each day for which the reference was fixed, whether it proceeded or not, and that there were five such days when no proceeding was had other than to adjourn.  Ten dollars a day is deemed a liberal allowance for each of such days.  I feel that I have before me sufficient facts to enable

me to indulge in other criticisms which seem to be invited. It is always a difficult and invidious task to attempt to fix the value of the services of an attorney without the fullest knowledge of all the circumstances. The determination of the above matters is believed to dispose of all the material objections urged to the account. It will be observed that, with the single exceptions of the "trust" or "bank-book" cases, and the charge for adjournments just referred to, no criticisms of the value of the services claimed to have been rendered by either of the attorneys has been entered upon. Should any material matters have escaped attention, or errors made in the figures, they can be suggested and disposed of on the settling of the decree. The result of the views above expressed is that there should be disallowed of the amount paid Mr. Frost $375, and of the amount paid Mr. Miller, including the note, $5,-054.64. It thus becomes unnecessary to determine whether the giving of the note can be regarded as a payment. As the administrator is not chargeable with any dishonesty, it would seem to be fair to allow him his costs, and also costs to the other parties, except John L. Collyer, who has taken no active part in the controversy, payable out of the fund.