## *In re* SMITH'S ESTATE.

'(*Surrogate's Court, Rockland County, Filed December,* 1892.)

1   WILL—WHEN WIDOW ENTITLED TO DOWER IN ADDITION TO DEVISE.

A testator directed that "all rents and interest moneys be paid by his executors to his wife," out of which she should pay all taxes and assessments, the balance, or so much thereof as might be necessary for the purpose, to be used by her in support of herself and family, and after bequeathing his household furniture to his wife, he devised and bequeathed the residue of his estate to his children to be paid to them, in equal shares, as they arrived at the age of 21. *Held*, that as dower is favored, and there were no express words, or a demonstration upon the face of the will of the intention of the testator, that the widow should not take both dower and the provision made for her, the widow was entitled to dower, in addition to what was given to her by the will.

**2.** EXECUTOR—SALE FOR HIS PERSONAL BENEFIT.

In such case the executor sold certain lots to persons who did not complete their purchases, as the same were bought in behalf of the executor, his sister or the widow. The nominal purchasers assigned their bids without consideration to the sister, who, after receiving a conveyance thereof from the executor, conveyed same at the executor's request to the widow. *Held*, that although no person acting in a fiduciary capacity can deal with the trust estate to his personal gain or benefit, yet as the sale was not unqualifiedly repudiated by the contestant, the executor would be held to the sale; but even though the right of repudiation existed, *quaere* whether the court, under the circumstances, could afford practical relief.

**3.** EXECUTOR'S ACCOUNT—CREDIT FOR WIDOW'S DOWER.

On such sale to the widow, the executor cannot be allowed the value of the widow's dower in a payment to the widow, as the sale made by him must be presumed to have been made subject to the right of dower, and, if not, the executor was not authorized to purchase her dower, and, on the other hand, if she had no dower, the payment was without consideration.

**4.** SAME—REPAIRS TO PRESERVE REAL PROPERTY.

An executor has the right to make repairs to preserve the property and to obtain a proper income therefrom, and proof must be given that such expenditure was not necessary, before the item will be disallowed.

**5.** SAME—TAXES—WHEN PAYMENT ALLOWED OUT OF PRINCIPAL.

As the will expressly provided that the widow should pay taxes out of income, such payments are not chargeable against the principal estate unless it appeared there was insufficient income for the purpose, and that such payments became necessary for the preservation of the estate.

**6.** SAME—FIRE INSURANCE.

As the executor was clothed with trust authority over the estate, items for insurance are proper credits when, although not expressly, they were impliedly, authorized by the will, and the payments were necessary to the preservation of the property.

**7.** SAME—WHEN COSTS OF REPAIRS WILL BE DISALLOWED.

In the absence of explanation, an item for repairs to property paid two years after its sale, will not be allowed.

**8.** SAME—ITEM PERSONAL TO EXECUTOR.

A credit will not be allowed for the amount of a judgment against the executor's brother, when it has no connection with the administra-

tion of the estate, and the proof shows that it is a personal matter between the executor and his brother.

**8. SAME—EXPENSE OF RESALE.**

Items for expenses in making a resale of real estate will be allowed, when the resale was directed by the court, and the sums were necessarily incurred to carry out such direction.

**10. SAME—LEGAL SERVICES—WHEN NOT CHARGEABLE TO ESTATE.**

Legal services rendered to the widow cannot be charged to the estate.

**11. SAME—GOODS FURNISHED TO WIDOW OR LEGATEE.**

Goods furnished by the executor to the widow cannot be allowed against the principal. Same, if chargeable, can be only treated as a payment on account of income to her, and when the proof is insufficient to establish such, or that value in kind supplied a legatee was a payment on account of the legacy, the credits cannot stand. and the executor must seek redress in some other court.

**12. SAME—PAYMENT OF INTEREST ON EXECUTOR'S MORTGAGE.**

Payment of interest on a mortgage which was the individual obligation of the executor, given by him upon a lot of the estate after he became the purchaser thereof from his brother, and which accrued between the first sale thereof and a resale ordered by the court, will not be allowed.

**13. SAME—PLAINTIFF'S COSTS OF SUITS AGAINST EXECUTOR.**

Credit for costs paid in two suits brought in the Supreme Court against the executor will be allowed when the judgment rolls show a recovery against the executor as such, and not against him personally.

**14. SAME—COSTS OF DEFENDING SUITS AGAINST EXECUTOR.**

An executor does not become entitled to reimbursement for sums expended for legal services by showing the fact of payment, or that he acted in good faith. Upon objection made, he must prove the necessity and value of such services.

Judicial settlement of executor's account.

Arthur S. Tompkins, for executor; George A. Wyse, for executrix; Abram A. Demarest, for contestants.

WEIANT, S.—The testator, John T. Smith, died, leaving a last will and testament, which was admitted to probate December

20, 1875, containing the following dispositions of his property: First. He directed his funeral expenses to be paid. Second. He provides that "it is my wish, and I hereby order and direct, that my homestead farm remain in charge of my executors, to be controlled, worked, and conducted by them as they deem proper until my youngest child shall arrive at the age of twenty-one years." Third. He gives to two of his sons, Benjamin and John H., the use of certain store property for three years after his death, without rent, and then adds, "and, should they choose to occupy said premises after three years, I then order and direct that they pay such rent as shall be agreed upon between my said executors." Fourth. He directs that the moneys arising from a specified mortgage held by him "be deposited with the National Trust Company of the city of New York, at interest, in the name of my executors, after paying thereout" a certain note. "Sixth. I hereby order and direct that all rents and interest moneys be paid over by my executors to my beloved wife, Anna Maria Smith, out of which she is hereby directed to pay all taxes and assessments to be assessed against my property, the balance, or so much thereof as may be necessary for the purpose, to be used by her in support of herself and family." By the seventh item he gives a legacy of $100 to his son Joseph, and, by the tenth, a legacy of $500 to his daughter Deborah, which legacies he directs to be paid as soon as practicable or convenient after his decease. By the eighth provision he provides: "I give and bequeath unto my beloved wife, Anna Maria Smith, all my household furniture, of whatever name or nature whatsoever." Ninth. He bequeaths the one-half of certain store goods to his son John, and affirms a transfer which he had theretofore made to his son Benjamin of the other half thereof, and subject to the payment of certain debts. By the eleventh provision he disposes of the residue of his estate as follows: "All the rest, residue, and remainder of my estate, both real and personal, I hereby give, devise, and bequeath unto my children, except Joseph (for whom I have made ample pro-

vision heretofore), to be equally divided between them, share and share alike, and to be paid to them as they respectively arrive at the age of twenty-one years, as near as the amount thereof can be ascertained." He then adds a provision disposing of shares of such residue in the event of any of his children dying before receiving his or her share, with and without issue. Last. He appoints his said widow executrix, and his sons John H. and Benjamin executors, of his will. All qualified and entered upon the duties of the executorship, and acted therein until about in the year 1885. At that time a judicial accounting was had by the executrix and executors, and a balance of cash was then decreed to be in their hands, of $441.21, and leaving still unadministered and undivided, of said estate, the property and assets now brought into this accounting. Immediately after such accounting, Benjamin resigned as executor. The widow remained executrix, but did not participate in the further administration of the estate. John H. continued, and practically became the sole executor of the will. Among other properties left unadministered and undisposed of at the time of the prior accounting were some lots known as the "Nyack Lots." These were sold by the accounting executor at public sale, and he charges himself with having received therefor the aggregate sum of $4,715. Of these lots, five were struck off at such sale at certain sums, aggregating $2,255. The persons to whom the lots were struck off never completed their purchases; and, indeed, it appears that the same were being bought in behalf of the executor, his sister, or the widow. Subsequently a conveyance was executed by the executor to his sister Catherine, to whom the nominal purchasers assigned their bids without consideration, and thereafter the sister conveyed the same, at the request of the executor, to the widow, for the expressed consideration of $3,133.20. This consideration was made up of a valuation of the lots subject to the dower of the widow at $2,000, and her dower estate, which at the time was computed and valued at $1,133.20, making

$3,133.20.   The contestants claim that this sale should be held invalid, and the property decreed to be still part of the estate, or that, in the event that the same should be permitted to stand, that the executor should not be allowed the credit he has given himself in his account for the dower of the widow, of $1,133.20.

It is well settled that no person acting in a fiduciary capacity can deal with the trust estate, to his personal gain or benefit. But, as contestants' counsel does not take the unqualified position of repudiation of the sale, I shall not consider the matter in that view.   Even though such right of repudiation exists, I am not convinced that the Surrogate's Court, under the circumstances, can afford practical relief.   Holding the executor to the sale, the question is then presented by the objection of the contestant as to the allowance of the credit of the $1,133.20 for the dower.   This presents the inquiry as to whether or not the widow had a dower estate in the lots conveyed to her, and involves a construction of the testator's will.   The counsel for the contestants claims that the provision made by the will for the widow was such that she was put to her election whether she would take the same or claim her dower.   This question has received my careful consideration, and I have arrived at the conclusion that such is not the case.   If lands be devised to a woman, or pecuniary or other provision be made for her by will, in lieu of dower, she shall make her election whether she will take the lands so devised, or the provisions so made, or whether she will be endowed of the lands of her husband.   1 Rev. Stat. p. 741, section 13.   When entitled to an election she shall be deemed to have elected to take the devise or pecuniary provision unless, within one year after the death of the husband, she shall enter upon the lands to be assigned to her for her dower, or commence proceedings for the recovery or assignment thereof. Id. section 14.   Many years have passed since the death of the testator, and the widow has made no entry upon the lands to be assigned to her for her dower, or commenced proceedings for the recovery of the same.   If, then, such provisions of the will

for her were in lieu of dower, she must be deemed to have elected to take the same. Was such provision made in lieu of dower and she put to her election? I think not. There can be no controversy as to the general principles governing the question of election between dower and a provision for the widow in the will. Dower is favored. It is never excluded by a provision for a wife, except by express words or necessary implication. Where there are no express words, as in this case, there must be upon the face of the will a demonstration of the intention of the testator that the widow shall not take both dower and the provision. The will furnishes this demonstration only when it clearly appears, without ambiguity or doubt, that to permit the widow to claim both dower and the provision would interfere with the other dispositions, and disturb the scheme of the testator, as manifested by his will. Konvalinka v. Schlegel, 104 N. Y. 125-129, 9 N. E. Rep. 868. Judge ANDREWS, writing the opinion in the case cited, says:

"We repeat, the only sufficient and adequate demonstration which, in the absence of express words, will put the widow to her election, is a clear incompatibility, arising on the face of the will, between a claim of dower, and a claim to the benefit given by the will"—citing many authorities.

It is claimed that under this will there is a trust created in the executors, to hold the estate, and apply the income, and with a power of sale, under such circumstances that the claim of dower is inconsistent with the provisions of the testator's will, and thus she was put to her election; and the contestant's counsel cites Savage v. Burnham, 17 N. Y. 561, and Tobias v. Ketchum, 32 N. Y. 319, to sustain this proposition. But Judge ANDREWS, in Konvalinka v. Schlegel, page 130, 104 N. Y., and page 869, 9 N. E. Rep., thus speaks of such a contention:

"It seems to be supposed that there is a necesary repugnancy between the existence of a trust in real property, created by a will, and an outstanding dower interest of a widow in the trust property. We perceive no foundation for this contention. The

mere creation of a trust for the sale of real property, and its distribution, is not inconsistent with the existence of a dower interest in the same property. There is no legal difficulty in the trustee executing the power of sale, but the sale will necessarily be subject to the widow's right of dower, as it would be subject to any outstanding interest in a third person, paramount to that of the trustee. * * * It has frequently been declared that powers of, or in trust for, sale, are not inconsistent with the widow's right of dower"—citing authorities.

The learned judge also shows that the cases of Savage v. Burnham and Tobias v. Ketchum, *supra*, have been misapprehended. So that, if there be a trust in the executors under this will to receive the rents and profits of the realty, and pay them over to the widow, and to receive and invest the proceeds of the sale, or any part of the estate, it is not necessarily inconsistent with the widow's dower in such property. The testator, by his will, in the absence of provisions to the contrary, must be presumed to be making disposition only of his own estate and interests, and subject to the interests of all others therein, including the widow's right of dower. Judge ANDREWS so holds in Konvalinka v. Schlegel, *supra,* and reviews the authorities establishing that principle; and, in speaking of the case of Tobias v. Ketchum, he says the widow was there "put to her election, not because the vesting of the title in the trustees was *per se* inconsistent with a claim of dower, but for the reason that the will made a disposition of the income, and contained other provisions which would, in part, be defeated if dower would be, or was, insisted upon." In the case of Akin v. Kellogg, 119 N. Y. 441, 23 N. E. Rep. 1046, the will contained an express provision that the bequests and devises to the widow were in lieu of dower. In *Re* Zahrt, 94 N. Y. 605, it was held that the provision was inconsistent with the assertion of a dower right, and so must be construed as in lieu of dower. The will in that case, after directing the payment of debts, funeral and testamentary expenses, read as follows: "I give,

bequeath, and devise to my wife, Eliza Zahrt, the rents, income, interest, use, and occupancy of all my real and personal estate" —upon certain express conditions. It was held that these conditions would be defeated as to so much of the estate as should be set off for dower, and that the disposition made by the will was so repugnant to the claim of dower that they could not stand together. Here no such conditions are attached. The widow, it is true, is directed to pay all taxes and assessments that may be assessed against the property out of the rents and interest, but I do not perceive that this is inconsistent with her estate of dower.

It may be said that the provision of the will directing that the homestead farm remain in charge of the executors, to be controlled, worked and conducted by them, is repugnant to the estate of dower therein, for the same could not be carried out if the widow be entitled to have a third thereof assigned to her as her dower. But as stated by Judge ANDREWS in Konvalinka v. Schlegel, *supra,* the testator must be presumed to be making disposition of his property only and subject to the dower. As we have seen from the authorities, the fact alone that a power of sale is given, and with a trust, is not sufficient to put the widow to her election; and I do not understand that the fact alone, in addition that she is given, either directly or through trustees, the income of the estate, will necessarily put her to an election. But when a trust is created to receive the rents, profits and income, and apply the same according to the provisions of the will, in such manner and for such purposes as are inconsistent with the widow having her dower, then she must elect. This I understand to be the rule as deduced from the cases as reviewed and criticised in Konvalinka v. Schlegel, *supra.* It appears from the authorities that, where provision is made for a widow, it is deemed to be in addition to her dower. In Church v. Bull, 2 Denio, 430, the widow was given the whole of the testator's estate, real and personal, for life, or until she should remarry, and in Lewis v. Smith, 9 N. Y. 502, there was a devise to the widow of the whole estate for life, and yet in each case the

provision was held to be in addition to dower. The fact that in this case she receives the income and rents through trustees, while in those she received it directly, seems to me to raise no distinction that can be invoked to defeat her dower. In those cases the widow was given the benefit of the estate for life, or until remarriage. Here she receives the same only until the youngest child arrives at 21 years of age, when her interest in the estate under the will is entirely gone. Did the testator intend to not only deprive his widow of the income, by these provisions, but also of her dower? A provision, also, bearing against the claim that the testator intended the provisions of the will for his widow to be in lieu of dower, is that he disposes of his estate so as to deprive his widow of any interest therein, or benefit therefrom, as rapidly as each child arrived at 21 years of age, and even the homestead farm passes into the control of the children, absolutely, when the youngest child reaches that age. Even at the time of making his will, it may be inferred, from circumstances appearing therein, that some of his children were then near the age of 21 years. Even the rents and income, during such time as she was entitled to receive the same, were to be applied by her to the support of her children as well as herself. My conclusion, therefore, is that the credit of $1,133.20, as a payment to the widow for dower in the executor's accounts, is not a proper one, and authorized to be made by him, as executor; for the sale made by him must be presumed to have been made subject to the right of dower of the widow, to the extent of the prices at which the lots were sold, and, if not, the executor was not authorized to purchase her dower. On the other hand, if my conclusion be erroneous—that she had a right of dower—then the payment was without consideration, and wrongfully made, as she had no estate for which she should have been compensated.

Objection is made by the contestant to various items of credit in the accounts of the executor. The one of $161.38, for repairs on the Third avenue property, I think, should stand. The

evidence shows the same to have been paid by the executor. There is no proof that the same was not necessary. I think the executor had the right to make repairs to preserve the property, and to obtain a proper income therefrom.

The items for taxes, it seems to me, are not chargeable to the principal estate. The will expressly provides that the widow shall pay the same out of the income. They were not payable out of the principal estate, and, in any event, not until it appeared there was insufficient income for that purpose, and that such payment became necessary for the preservation of the estate. Of course the taxes paid by the executor are proper credits against the income fund.

The items for insurance, I think, are proper credits. Such payments are not expressly authorized by the will, but I think they are impliedly authorized. The executors appear to have been clothed with a trust authority over the estate, and it seems to me that they should be credited with the payments which are proper in the management and preservation of the properties under their charge.

The item of $40.09 for repairs on the Mt. Moor Hotel appears to have been paid in the year 1887. The testimony of the executor shows that this property was sold in the fall of 1885. I am therefore unable to understand how these repairs are chargeable to the estate, and the same must be disallowed.

The item of $63.63, being the amount of a judgment against his brother David, it does not appear has any connection with the administration of the estate. So far as the proof shows, it is a personal matter between the executor and his brother.

The credits $9.50, $25 and $25, for expenses incurred in making the resale of the Third avenue property, I think, should stand. This resale was directed by the court, and the same seems to have been necessarily incurred to carry out such direction.

The item of $76.25, being the bill of Mr. Stafford for legal services, is not chargeable, except in part, to the estate. For

preparing the deeds of the Nyack lots, and incidental services in that behalf, he served the executor, but in other respects he appears to have acted for the widow. The same may be allowed as a credit to the amount of $20, the balance being disallowed.

The credit of $1,218.01, for goods claimed to have been furnished to the widow, cannot stand against the principal estate. If the same is chargeable, it is only against the widow, to whom he claims to have furnished the goods. But I do not consider the proof sufficient to establish the same against her, as a payment on account of the income. If the executor has a claim for this merchandise against the widow and minor children, it appears to be an individual one, for which he must seek redress in some other court. The same may be said of the item of $280.97, for goods furnished to the legatee and devisee Loretta Storms. I find no sufficient proof to establish this as a payment, and it is only upon such a basis that the same may stand as a credit. No vouchers appear for the payments to this legatee.

As to the $162, paid Polly Demarest, for interest that had accrued between the first and second sales of the Third avenue parsonage lot, I am unable to see from the evidence that the same should stand as a credit. This mortgage was an individual obligation of the executor, given by him upon this lot after he became the purchaser thereof from his brother David. The payment of the interest was the discharge of his personal obligation, and I fail to see, from the evidence, how it became one that should be charged against this estate.

The credits for the costs paid in the two suits brought against the executor by his brothers Benjamin and Charles, for the respective sums of $251.98 and $221.55, should be allowed, as the judgment rolls show a recovery thereof against the executor, as such. It seems to me that, under the proofs, I am bound to regard the same as sums for which the estate is chargeable. If the executor had been deemed chargeable personally, it would seem that the Supreme Court would have so decreed. Although

it seems, however, that though not charged against him personally, that is not conclusive that they were incurred in good faith. Tucker v. McDermott, 2 Redf. Sur. 319.    As to whether or not the executor is entitled to be reimbursed for expenses paid or incurred by him for counsel and attorneys' compensation in the prosecution or defense of suits by or against him, as such, depends upon the nature of the suit, and his good faith in the matter.    Redf. Pr. 473; Code Civil Pro. section 1916.    In all cases, executors and administrators are entitled to such allowance for their actual and necessary expenses "as shall appear just and reasonable."    2 Rev. St. p. 93, section 58, as amended by chapter 362 of the Laws of 1863.    An executor does not become entitled to reimbursement for sums expended for legal services by merely showing the fact of payment, nor even, in addition, that he has acted honestly and in good faith.    Upon objection made, he must prove the necessity and value of such services.    St. John v. McKee, 2 Dem. Sur. 236.    An executor or administrator is bound to satisfy the surrogate of the necessity and reasonableness of the claim made by him for sums expended as counsel fees.    Willson v. Willson, id. 462; *In re* Peyser, 5 Dem. Sur. 244.    I am not satisfied, from the proofs, that there was any good reason for the executor defending these suits in which these expenses were incurred, or that he exercised good faith and fair judgment in refusing the demands of the plaintiffs before suit, and thus forcing the litigation.    However, I do not pass conclusively upon these allowances claimed for counsel and attorneys' charges, but reserve my determination until the settlement of the decree.    Indeed, as to all these items of disbursement, I will hear counsel further upon such settlement, so that I may correct any erroneous impressions I may now entertain as to them, or any of them.    A separate statement of principal and income should appear in the accounts. Let a decree be presented for settlement and entry, accordingly, upon notice; costs to be then adjusted.