## In re VAN NOSTRAND'S ESTATE.

### (Surrogate's Court, Rockland County, Filed April, 1893.)

1. EXECUTORS AND ADMINISTRATORS—ATTORNEY'S FEES.

     An administrator will not be allowed for moneys paid to his counsel for services requiring no legal skill, and which the administrator himself might have performed.

2. SAME—ALLOWANCE FOR CLERK.

     In such case a payment (inter alia) to counsel for the administrator for attending at an auction sale will be disallowed as to so much thereof as might be over and above what might be allowed a clerk if it were essential that a clerk should be employed.

3. SAME—REASONABLENESS OF CHARGES.

     When an attorney is paid for services requiring legal skill, and he testifies that the amount fairly compensated him, the court will, in the absence of evidence to the contrary, and when it cannot be guided by its personal knowledge, allow the charge.

Judicial settlement of account of Holland Trust Company as administrator.

Snider & Hopper, for administrator; Abram A. Demarest, for contestant.

WEIANT, S.—The only matters contested and submitted for my consideration and determination upon this accounting arise upon the item in schedule C of the accounts: "Paid Snider & Hopper, services, $700." From the bill submitted upon the hearing, it appears that the same is for legal services, and that the same has not in fact been paid by the administrator. The rule is well settled that in no event can an allowance be made to a representative of an estate for an administration expense—as, for instance, counsel fees—until he has actually paid it. Redf. Sur. Pr. (4th Ed.) 444; *In re* Bailey, 47 Hun 477; Shields v. Sullivan, 3 Dem. Sur. 296. But I shall not dispose of this matter upon that ground. The only oral testimony relating to the services charged for was given by Garret Z Snider, Esq., of the law firm who rendered the same. He testified on his direct examination to the services performed somewhat in detail, but aggregated his estimate as to their value at $700. On his cross examination he detailed the services again, and gave the valuation of the same in detail, which aggregates $505. The first services that he rendered were at the instance of the widow of the deceased, in searching to ascertain whether or not the deceased left a will. He says that he spent some 4½ days in that respect, and that his services were fairly worth $20 per day, making a total therefore of $90. Assuming that the services were thus rendered, and that the same were reasonably worth the sum named, yet the same cannot be allowed this administrator. The right of an executor or administrator to employ counsel in the prosecution or defense of actions or legal proceedings affecting the estate is, of course, allowable and proper (Redf. Sur. Pr. [4th Ed.] 447), and he is entitled to be reimbursed for all such necessary and reasonable expenditures;

but, to entitle him to charge the estate for moneys paid to his counsel or attorney, the executor or administrator must show that the services rendered were necessary, and that they merited the compensation awarded; and no allowance will be made where the services performed by counsel were such as the executor or administrator himself might justly have been expected to render. Id. 448; Raymond v. Dayton, 4 Dem. Sur. 333; St. John v. McKee, 2 Dem. Sur. 236; Joulnault v. Ferris, id. 320; Willson v. Willson, id. 462; *In re* Smith's Estate, 1 Misc. Rep. 269-280, 22 N. Y. Supp. 1067; *In re* Casey's Estate (Sup.), 6 N. Y. Supp. 608. These services, performed as to this matter by counsel, were such as the administrator, through its ordinary officers or agents, could readily have performed. Searching for the will required no legal skill or knowledge. All such services the law contemplates shall be performed by the administrator or executor, and it is for such usual and ordinary services that the commissions allowed by statute are awarded. He cannot be permitted to take these commissions, and then charge the estate with the compensation which may be earned by some one whom he has employed to do his work. If an executor or administrator sees fit to employ another to transact for him the usual and ordinary duties of his trust and for which the commissions were designed as full compensation, the expense of procuring such services becomes his own debt, and cannot be charged to the estate. *In re* Beach's Estate, 1 Misc. Rep. 27-33, 22 N. Y. Supp. 1079; Hall v. Campbell, 1 Dem. Sur. 415.

The charge of $10 for services in behalf of Mrs. Van Nostrand for making the effort to obtain a bond for her as administratrix is disallowed. I do not think an expenditure for such services is chargeable to the estate, as she was not appointed administratrix. *In re* Collyer (Surr.), 9 N. Y. Supp. 297. Neither do I consider that such service called for legal skill, as the same appears to have been simply an inquiry of the surety company as to whether the company would become surety for her.

The next charges are $5 for preparing a petition for the appointment of the Holland Trust Company as administrator; $20 for obtaining the written consent to such appointment or the waiver of their right to administration, of three of the next of kin; $20 for the preparation and presentation of the papers to the Surrogate's Court and obtaining the decree and letters of administration; and $10 for obtaining the appointment of appraisers. These services, requiring some special skill or knowledge as to legal questions, are properly such as the administrator is authorized to engage an attorney to perform, and charge the reasonable expense thereof to the estate. The sums testified to by Mr. Snider as fair compensation should be allowed, because the contestants offered no evidence to the contrary, and the court cannot be guided by its personal knowledge that the same are much above the usual charges. On July 29, 1891, it appears that Mr. Snider went to New York city, and, in company with the secretary of the trust company attended at the National Park Bank to obtain securities and papers of the deceased, and remove them to the office of the trust company. That is precisely what the law contemplates the administrator should have done without an attorney. No legal advice was required. The witness really so confesses, as he testifies that his only reason for so doing was because Mr. Van Sicklen, the secretary of the administrator, asked him to do so. On July 30th the usual notice to creditors to present claims was prepared, and the same delivered for publication in a newspaper by the attorneys; and on August 1st they caused notices of the making of the appraisement and inventory to be posted and served, which services, it is testified, were fairly worth $5 for what was done as to each matter, $10 in all. I am inclined to believe that such service was properly one that the administrator might employ an attorney to perform, and, as the value of the same is undisputed, the two items are allowed.

The attorney testifies to having performed services in attending at the making of the inventory on two different days, and for which he charges $20 for each day; that he prepared and had

published notices of a private sale of horses of the estate, for which he says the services were worth $5. He prepared notices for a public sale of certain of the personalty; had bills posted thereof; and performed other services in the way of preparing for the sale, for which he fixes $10 as the value. He attended at the sale; assisted at the same, acted as clerk; made some collections; and fixes the value of his services in that matter at $25. The testimony discloses that the sales amounted to but $575.90, and that there was an auctioneer who was paid 10 per cent. on the sales for his services. These items amount to $80, and are not proper credits. The administrator cannot be allowed for the services of an attorney or counsel in such matters. *In re* Quin (Surr.), 5 N. Y. Supp. 261; Pullman v. Willets, 4 Dem. Sur. 536, and cases above cited; *In re* Collyer (Surr.), 9 N. Y. Supp. 297. In *Re* Quin (Surr.), 5 N. Y. Supp. 261, an item of $30, paid for services to one who rendered services in making the inventory, was disallowed. Such a charge was refused in *Re* Collyer (Surr.), 9 N. Y. Supp. 297. The learned surrogate says, at page 298: "It is difficult to see how the payment to counsel for attendance and advice on the making of it [inventory] can be regarded as a necessary expense, in view of the further fact that, at most, an inventory is a mere guide, subject to correction by either party on the accounting. The cost of the attendance of counsel at its making does not appear to have been a just or reasonable expense to be incurred in the course of the administration. Ignorance in the matter on the part of the administrator will not justify it. He must, in such case pay the penalty of his ignorance out of his own pocket. He can not expect the estate to educate him."

The surrogate is supposed to appoint qualified men to perform this service, and in this case both were especially competent, as they were lawyers. It may well be that a clerk can be employed at an auction sale by an administrator, and he be repaid out of the estate for such an expenditure, but it must appear that it is essential to have a clerk, and what such service is worth.

That does not here appear, but I will permit this to be supplied, and then determine the same accordingly.

As to the charges for services in the matter of the Nyack Electric & Power Company, consisting of three items, aggregating $40, the same are allowable only to the extent that legal services were necessary. Much of the services charged for were such that any person of ordinary business capacity could have rendered; such as the search for, and correspondence as to, the lost certificate of stock, and also the collection of the dividends. As we have seen from a uniform line of authorities, such service should have been rendered by the administrator or its agents, and the statutory commissions are the compensation therefor. It would seem, however, that the services performed in giving the notice as to the loss of the certificate, and the giving of the bond of indemnity to obtain the new certificate, were of a legal character, requiring the service of one having some special legal knowledge, and, that being so, the administrator was justified in the employment of an attorney for those purposes, and I accordingly allow a credit for the same to the amount of $15.

Following the above matter are charges for services in regard to several western (Iowa) mortgages, known as the Harmon, Fast, Sumner, Crawford and Daubendick securities. It appears from the testimony, as also from the bill of Snider & Hopper, that these services were wholly in the form of correspondence and inquiries by Mr. Snider of the western agents or attorneys who had charge of the same at the time of the intestate's death. All legal services in relation to them seem to have been performed by the western agents or attorneys, and who appear to have been employed and paid to attend to those legal matters. I find nothing specified in the testimony as to the performance by Snider & Hopper, of any service requiring special legal knowledge or experience. Indeed, I rest this proposition entirely upon Mr. Snider's testimony. The following is an extract from the same: "What was there about that Sumner matter that required the services of an attorney, as distinguished from such services as an officer of the trust company could per-

form? Answer. I don't know what the officers of the trust company could have performed. They asked me in relation to those western securities, and I did what I have stated here. Question. Now, about those other western securities; what was there about them that required legal services, as distinguished from such services as those officers might have performed? A. Well, I don't know what the officers might have performed. Attorneys perform many things that men who are not attorneys can do just as well. I did whatever the trust company wanted me to do in relation to those mortgages. I don't think it is for me to pass upon that. I did what they wanted me to do." Then followed some further testimony in the same line, at the close of which the witness gave this answer: "The same service might have been done by a man who was not an attorney, and consequently might have been done by an officer of the trust company."

This testimony shows without question a contract of employment between Snider & Hopper and the administrator, and for any and all services performed thereunder the administrator became individually responsible and liable, and is legally obligated to pay. But as to that this court has nothing whatever to do. That is a matter to be adjusted and determined as between the attorneys and the trust company individually, and not as administrator. We have here only to do with the question as to whether the expenditures are properly chargeable against the estate as between the parties interested in the estate and the administrator, and, as we have already made it appear from the statute and authorities construing the same, for such services as were rendered with reference to those securities the administrator cannot charge the estate or be reimbursed therefrom, as the commissions are the compensation for that work. If the administrator sees fit to not personally perform these ordinary services attendant upon the performance of the trust he assumes, but employs an agent or attorney to perform the same, then he must individually make payment therefor. The charges for the services rendered in relation to these securities are ac-

cordingly wholly disallowed, except for the preparation of the assignment of the Sumner mortgage, which is allowed at five dollars, as the value is stated by Mr. Snider.   As to the services rendered in regard to the collection of the note against Green & Son, none were such as made it necessary to employ a lawyer. No legal steps or proceedings whatever were taken.   The officers of the administrator or its employes could and should have rendered the same for the commissions.   Mr. Snider admits that the administrator could probably have collected the claim.   No allowance can be made for that service.

In the Grove matter there appears to have been a litigation pending at the time of the death of the intestate in which the intestate was represented by an attorney by the name of John J. Gleason.   Nothing whatever has been done in that matter since the intestate's death, except to pay Mr. Gleason's bill for his services, and obtain the papers from him with his consent to a substitution of another attorney for the administrator.   This matter may be eliminated from consideration at this accounting, and reserved for disposition upon a future accounting, when the litigation may be finally adjusted or determined.   Inquiry as to the bank stock and Balch and Haring notes were all the services that were rendered as to those matters, and, for reasons already assigned as to other similar charges, the same are not allowed.   The claim for reimbursement for services in reference to the Brigantine Beach properties was withdrawn, as the same related to the real estate over which the administrator had no jurisdiction or supervision.   A decree may be settled and entered accordingly.